## MICHAEL WARNKE, Respondent, v. A. LESCHEN & SONS ROPE COMPANY, Appellant.

### St. Louis Court of Appeals, December 8, 1914.

1. **MASTER AND SERVANT: Injury to Minor Servant: Physical Facts.** In an action for injuries to plaintiff's minor son, while in defendant's employ, caused by a steel wire springing from pliers held by the boy and striking him in the eye, while he was carrying out defendant's order to splice together the two ends of the wire, which had broken, *held* that the testimony given by the boy as to the manner in which he received his injury was not opposed to the physical facts, so as to require that it be rejected.

2. **EVIDENCE: Physical Facts.** Testimony cannot be rejected as being opposed to the physical facts unless it is plainly and palpably incompatible with physical laws or undisputed facts.

3. **MASTER AND SERVANT: Injury to Minor Servant: Failure to Warn: Sufficiency of Evidence.** In an action for injuries to plaintiff's minor son, while employed in winding steel wire on spools, evidence that, after a wire had caught on a defective pulley and broken, defendant's foreman ordered the boy to get the wire out and splice it, without giving him instructions or warning him of the danger, and that the boy was injured by the wire slipping from his pliers and striking him in the eye, while he was engaged in carrying out the order, *held* sufficient to warrant a finding that the master was negligent.

4. ———: ———: ———: Instructions. In an action for injuries to plaintiff's minor son, while in defendant's employ, caused by a steel wire springing from pliers held by the boy and striking him in the eye, while he was carrying out defendant's order to splice together the two ends of the wire, which had broken by ·reason of being caught on a defective pulley, *held* that an instruction given for plaintiff, which submitted the question of defendant's negligence, although unnecessarily long and somewhat lacking in clearness, was not erroneous as being misleading or confusing.

5. ———: ———: ———: Instructions: Assumption of Facts. In an action for injuries to plaintiff's minor son, while in defendant's employ, caused by a steel wire springing from pliers held by the boy and striking him in the eye, while he was carrying out defendant's order to splice together the two ends of the wire, which had broken by reason of being caught on a defective pulley, *held* that an instruction given for plaintiff, which submitted the question of defendant's negligence, did not assume that the pulley was defective or that the wire broke, by reason of requiring the jury to "further find from the evidence that in attempting to splice the wire it sank into and caught in said defective pulley," where a former part of the instruction required the jury to find that the pulley was defective and that the wire broke as a result thereof.

6. ———: ———: ———: Instructions: Conformity to Issues. In an action for injuries to plaintiff's minor son, while in defendant's employ, caused by a steel wire springing from pliers held by the boy and striking him in the eye, while he was carrying out defendant's order to splice together the two ends of the wire, which had broken by reason of being caught on a defective pulley, the petition alleged, among other things, that the pulley was "badly worn, out of repair, unfit for use, and the wire in question would sink into and catch therein, thereby causing said wire to break; and that it was dangerous to splice said wire because of the difficulty of putting such broken wire over and under said defective, out-of-repair and unfit pulley, in that·said wire would sink into and catch in said badly worn, defective and unfit pulley." An instruction given for plaintiff required the jury to find that the pulley was defective and out of repair, .and that, on account thereof, the wire became caught in the pulley and sank into it. *Held*, that, while the instruction was not entirely free from criticism, the giving of it did not constitute reversible error on the ground that it was broader than the petition, especially in view of the fact that the gravamen of the charge of negligence was the negligence of the foreman in ordering the boy to splice the wire without giving him instructions or warning him of the danger.

7. ———: ———: ———: Sufficiency of Evidence. In an action for injuries to plaintiff's minor son, while in defendant's employ, caused by a steel wire springing from pliers held by the boy and striking him in the eye, while he was carrying out defendant's order to splice together the two ends of the wire, which had broken by reason of being caught on a defective pulley, evidence *held* sufficient to warrant a finding that it was not reasonably safe for defendant's foreman to order the boy to undertake to splice the wire, under the circumstances, and to warrant a finding that the boy needed instruction in splicing the wire, and that he applied to the foreman for such instruction, but received none.

8. DAMAGES: Instructions: Allowing Excessive Recovery: Harmless Error. In an action for personal injuries, the instruction on the measure of damages was not prejudicially erroneous, by reason of the fact that it authorized the jury to allow damages for certain items up to a certain amount (not exceeding the amount claimed therefor in the petition), which amounts were greater, by $4.60, than the amounts shown by the evidence, since it will not be assumed that the jury disregarded the evidence and found the full amount authorized by the instruction.

9. ———: ———: ———: ———. In an action for injuries to plaintiff's minor son, the instruction on the measure of damages was not prejudicially erroneous for authorizing the jury to award damages for future loss of earnings, in the absence of any evidence tending to show that such loss would be sustained, where the verdict was for less than the loss of earnings shown to have accrued up to the time of the trial, in view of sections 1850 and 2082, R. S. 1909, requiring the appellate court to disregard errors not affecting the substantial rights of the parties.

Appeal from St. Louis City Circuit Court.—*Hon J. Hugo Grimm*, Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

(1) The court erred in overruling the demurrers to the evidence, because the plaintiff's son's own story shows that it was physically impossible for him to have been injured in the manner in which he claims. Where the testimony offered by plaintiff and relied upon by

him to make out his case utterly at variance with physical facts, it is the duty of the court to give a peremptory instruction for the defendant. Artz v. Railroad, 34 Iowa 159; Maryland v. Railroad, 16 Atl. Rep. 623; Meyers v. Railroad, 24 Atl. Rep. 747; Carroll v. Railroad, 12 Wkly. Notes Cas. 348; Kelsay v. Railroad, 129 Mo. 374; Nugent v. Milling Co., 131 Mo. 252; Weltmer v. Bishop, 171 Mo. 116; New v. Railroad, 114 Mo. App. 385; Gurley v. Railroad, 104 Mo. 233; Scroggins v. Railroad, 138 Mo. App. 220; Schaub v. Railroad, 133 Mo. App. 444; Blumenthal v. Railroad, 97 Maine 255; McKinley v. Street Rd., 86 N. Y. Supp. 461; Payne v. Railroad, 136 Mo. 575. (2) The court gave erroneous instructions: Instruction number 1 given for the plaintiff is erroneous. The instruction covers nearly two pages of printed matter, is drawn in a loose, rambling fashion, does not clearly define the issues, and is very misleading. This instruction assumes that the pulley in question was defective and out of repair, and also assumes that the wire broke. These were controverted questions, and it was error to assume the truth of them. Minnier v. Railroad, 167 Mo. 99; Blasland, etc., Co. v. Hilig, 70 Mo. App. 301; Orscheln v. Scott, 79 Mo. App. 534; Hull v. St. Louis, 138 Mo. 617; Fullerton v. Fordyce, 121 Mo. 1; Linn v. Massilon Bridge Co., 78 Mo. App. 11. The petition limited the defective condition of the pulley by specific allegations as to how it was defective, and the only evidence of any defective condition was that of plaintiff's son, to the effect that a deep, narrow notch was worn in the surface of the pulley. But this instruction does not limit the consideration of the jury to any particular defect, but permits them to find that it was defective in any way. It is error to give an instruction that thus broadens the issues. It should have limited the defect to the specific conditions which the evidence tended to prove. Casey v. Bridge Co., 114 Mo. App.

64; Schroeder v. Transit Co., 111 Mo. App. 75; Delo v. Mining Co., 160 Mo. App. 45; Schaaff v. Box & Basket Co., 131 S. W. 937; Mulderig v. Railroad *et al,* 116 Mo. App. 655; Sommers v. Transit Co., 108 Mo. App. 319. This instruction makes it the absolute duty of the foreman to instruct and warn the plaintiff's son, regardless of whether or not the boy needed instruction or warning, and though the evidence wholly fails to show that he needed either warning or instruction. His own testimony shows that he had three years' experience in handling and welding wire. (3) The instruction on the measure of damages erroneously permits recovery for future loss of the earnings of plaintiff's son, when there was no evidence tending to show that there would be any loss of earnings between the date of the trial and the time when his son would arrive at the age of twenty-one years. It is error to include in an instruction on the measure of damages an item which was not pleaded and proven. Moellmann v. Geise-Henselmeier Lumber Co., 134 Mo. App. 485; Gibler v. Railroad, 203 Mo. 208; Waldopfel v. Transit Co., 102 Mo. App. 524. (4) The verdict is excessive. No evidence pointed to future loss of the boy's earnings or to the need of any future expenses— hence, the damage was complete. That damage, by actual calculation, was only $588.20. The verdict was for $1,000.

*S. P. Bond* for respondent.

(1) It is the duty of a master to notify a minor servant of the ordinary risks and dangers of his employment, which the master knows or which a master of ordinary prudence and intelligence would under like circumstances know the minor does not understand or appreciate and to instruct him how to avoid it. Labat on Master and Servant, sec. 558, p. 558; Mertz v. Leschen & Sons Rope Co., 174 Mo. App. 94,

158 S. W. 807, 811; Bohn Mfg. Co. v. Erickson et al., 50 Fed 942; Cleveland Rolling Mill Co. v. Carrigan, 46 Ohio, 283, 292, 295; Railroad v. Adams, 105 Ind. 161, 163, 165; New Albany Forge & Rolling Mill v. Cooper, 113 Ind. 363; Haynes v. Colchester Mills, 69 Vt. 1, 5; Connors v. Grilley, 155 Mass. 575; Glover v. Dwight Mfg. Co., 148 Mass. 22, 23; Jarvis v. Coes Wrench Co., 117 Mass. 170; Walker v. Railroad, 104 Mich. 606, 611; Busert v. Williams, 51 Mo. App. 13; Dowling v. Allen, 102 Mo. 218; Bromley v. Smith, Beggs & Rankin Machine Co., 12 Mo. App. 594; Gorin v. Railroad, 37 Mo. App. 221; Deeds v. Chicago, B. & O., 137 S. W. 1013; Timmerman v. Frankel, 157 S. W. 1051; Moeller v. Railroad, 133 Mo. App. 68, 75; Seller v. Shoe Co., 130 Mo. App. 723; Miniea v. St. Louis Cooperage Co., 157 S. W. 1006. (2) The form and substance of respondent's first instructions are sustained and warranted by Radtke v. Basket & Box Co., 229 Mo. 1, 16; Burkard v. A. Leschen & Sons Rope Co., 217, 466; Cleveland Rolling Mills Co. v. Carrigan, 46 Ohio St. 283; Metz v. A. Leschen & Sons Rope Co., 158 S. W. 807. (3) Obedience is the primary duty of servant. Stephen v. Railroad, 86 Mo. 221; Brothers v. Carter et al., 52 Mo. 372; Burkard v. A. Leschen & Sons Rope Co., 217 Mo. 466. (4) Where the servant relies upon the assurance of the foreman, in charge of the work and in charge of the servant, and the servant is injured, the master is liable for such injuries. Burkard v. A. Leschen & Sons Rope Co., 217 Mo. 466; O'Brien v. Implement Co., 141 Mo. App. 331; Mueller v. Shoe Co., 109 Mo. App. 506; Bleisner v. Reismeyer Distilling Co., 157 S. W. 980. (5) The court did not err in giving respondent's instruction number 1. An instruction may be so long and deal with so many important matters, as to mislead and confuse the jury as to the issues; but, where the party objecting on appeal does not point out such objections and they do not appear from a careful reading of the instruction, the objection will

be overruled.    Crowl v. American Linseed Co., 164 S.
W. 618.    (6) There was no error in giving instruc-
tion number 3 in behalf of respondent.    This instruc-
tion should be taken and read with respondent's in-
struction number 1, as well as with all instruction giv-
en by the court, whether for the plaintiff or defendant,
and if being so read they are consistent and not cal-
culated to mislead the jury, the judgment should be
permitted to stand.    Burkard v. A. Leschen & Sons
Rope Co., 217 Mo. 466; Hart v. Railroad, 55 Mo. 476;
Whalen v. Railroad, 60 Mo. 323; Haworth v. Railroad,
94 Mo. App. 215; Dickson v. Railroad, 104 Mo. 49;
Czegewgk v. Railroad, 121 Mo. 201, 215; Pacjiris v.
Hartman, 190 Mo. 539; Moore v. Mining Co., 105 Mo.
App. 709; Gordon v. Burris, 53 Mo. 332    (7) Respond-
ent's instruction number 4 was properly given and is
authorized by the cases of Smoot v. Kansas City, 194
Mo. 513; Tinkle v. Railroad, 212 Mo. 445; Blyston v.
Spencer, 152 Mo. App. 118, which authorize recovery
of damages for hospital bill, doctor's bill, etc., not be-
yond the amount claimed in the petition.    (8) And
properly allowed for recovery for services until re-
spondent's son became twenty-one years of age and
the damages are not excessive.    Schmidt v. Railroad,
46 Mo. App. 380; Frick v. Railroad, 75 Mo. 543; Kei-
ser v. Transit Co., 108 Mo. App. 708; Mauerman v.
Railroad, 40 Mo. App. 348; Lang v. Railroad, 115 Mo.
App. 582.    (9) Where the allegations in the petition
are general, the instructions may submit any particu-
lar act of negligence revealed by the evidence.    Hall
v. Railroad, 165 Mo. 114.

ALLEN, J.—Plaintiff brings this action to re-
cover for the loss of the earnings of his minor son re-
sulting from an injury received by the latter while in
the employ of the defendant corporation and alleged to
have been occasioned by its negligence, and for cer-
tain items of expense incurred by plaintiff in and

about the treatment of his son's injury.   Plaintiff recovered judgment below in the sum of $1000, and the defendant appeals.

On March 22, 1910, plaintiff's son, being then a minor about sixteen years and nine months of age, was in the employ of the defendant in the latter's factory, and engaged in operating a machine for "spooling" or winding steel wire upon certain spools or "bobbins."   Though plaintiff's son had been in the defendant's employ for some three years, he testified that he "had been working at that particular work about three weeks."   The machine which he was operating had three of these bobbins, upon each of which wire was wound from a bundle thereof which had been placed upon an upright roller, termed a "winch."   In this operation the wire was directed by certain pulleys or rollers over or under which it ran in passing from the winch to the bobbin.

Plaintiff's son testified that on Saturday, March 19, 1910, one of the wires thus being wound upon a bobbin of this machine became caught under one of the rollers above mentioned.   It appears that this wire was held in position by four rollers located between the winch and the bobbin; and, according to the testimony of plaintiff's son, it became caught beneath the second roller from the bobbin.   Plaintiff's son stated that prior to this Saturday morning he had always wound small wire on these bobbins; but that this morning, shortly before the accident, he was required to use a larger wire; that the small wire had worn a groove in the roller in question, and that the larger wire became caught in such groove, causing the wire to break.   He further testified that when the wire thus became caught and broke, he went to defendant's foreman and told the latter thereof, saying that he "couldn't to a thing with it;" but that the foreman told him that he must splice the wire and proceed with the work.   The boy states that he made a further effort to

remove the wire, but did not succeed therein and ran the machine the remainder of the forenoon operating the remaining two bobbins only; that he quit work at noon of that day and did not return to work until the following Tuesday morning, March 22, 1910; that up-on returning to work he found the machine in the same condition in which he had left it, and again appealed to the foreman who said: "You must go over there and splice that machine."

Plaintiff's son says that he had not been given any special instructions with respect to the work which he was doing, when he was put at the same, and that the foreman gave him no instructions as to what to do in the emergency in question, nor any warning of danger in the premises, but merely ordered him to remedy the matter himself; that he thereupon took a pair of "pliers," caught hold of the broken wire near the roller under which it was caught, and endeavored to pull it out so that he could braze or weld it, and, after pulling at it for some time, succeeded in getting about a foot and a half thereof from beneath the roller; that he had the wire caught by the pliers about six inches from the roller, with the remaining one foot of the wire "bending a little down," and was standing pulling the wire, with his hands against his stomach, when the pliers slipped from the wire. He says: "I pulled as hard as I could with both hands. The wire was tight. The pliers slipped and I went back about six inches from the position I had been in before that. . . . When this wire slipped the end of it flew over the top of the roller towards the bobbin and then it came back towards me again—it went back just as quick as lightning. It first went back towards the bobbin. . . . After it had gone as far that way as it could it rebounded and came towards me and struck me in the eye."

On behalf of defendant there was testimony of one witness, a young man, to the effect that plaintiff's

son did not receive his injury in pulling a wire from beneath a roller, but in an altogether different manner. There was testimony for defendant to the effect that nothing was found wrong with the machine in question after plaintiff's son was injured, but, on the other hand, defendant's foreman, in testifying as to the condition of the machine after the accident, said: "I saw broken wire there." There was also much testimony adduced by defendant in an effort to show that the accident could not have happened in the manner in which plaintiff's son claims that it did, for the reason that a small wire would not wear a small groove in one of these rollers, but that the groove thus worn would be so large that a larger wire, such as the boy was using, could not become caught therein.

Other pertinent facts will be referred to so far as may be necessary, in the course of the opinion.

I. It is strenuously urged that defendant's demurrer to the evidence should have been sustained. This contention is predicated entirely upon the proposition that it was physically impossible for plaintiff's son to have been injured in the manner in which he claims to have received his injury, and that his version thereof should for this reason be wholly rejected.

It is first said to have been utterly impossible for the wire, under the circumstances related by plaintiff's son, to spring back over the roller which held it and then recoil toward the boy; and that if this were possible, the wire in question could not have reached the boy's eye, as he said it did. But we cannot accede to this. There was ample evidence, if any be needed, to the effect that the steel wire, being then unwound from a coil thereof, was "springy" and likely to fly about when released from a given position. Clearly we could not say that such a wire after slipping from a pair of pliers in the hands of plaintiff's son could not fly back and then rebound toward him. Neither, un-

der the circumstances, could we say that the end of the wire could not reach and pierce the boy's eye, as he said it did; for he states that he had hold of the wire at about six inches from the roller, with about one foot thereof between him and the point at which the wire was held by the pliers. It does not appear just what was the distance from the roller to the boy's eye, and certainly we could not say that it was physically impossible for the foot and a half of wire to reach the eye under the circumstances shown by plaintiff's evidence.

A further insistence is that the wire could not have become caught in the roller in the manner in which plaintiff's son says that it did. It is said to be utterly impossible for a small wire to wear a narrow groove in the roller, so that a larger wire when run over the same roller would become caught therein. This is said to be so particularly because of the fact that this roller and that one nearest the bobbin were both contained in a "frame" which moved somewhat from side to side in order that the wire might be smoothly wound upon the bobbin. And it is said that it would inevitably result from such movements of the frame, and the vibration of the wire due to its rapid motion, that the roller would be worn in such a wide groove as to make it impossible for a wire, such as plaintiff was using, to become fastened therein.

It appears that these rollers or pulleys, when new, have what is termed a V-shaped groove, in which the wire runs and which prevents it from slipping off. That the cast iron rollers wore down from the rapid action of the steel wire over them quite clearly appears from defendant's own evidence. It appears that these rollers revolved from two hundred to three hundred times per minute, and, being of cast iron, wore rather rapidly. Defendant's witnesses differed considerably in their statements, or opinions, as to the usual life of such a roller. However, defendant's superinten-

dent said that they were generally allowed to wear down very near to the outside diameter of the hub, saying: "We never change them until they are worn out."

The distance which the frame, above mentioned, moved back and forth, carrying with it the roller in question and the roller nearest to the bobbin, does not appear. Plaintiff's son testified that these two rollers "move the least bit from one side to another."

We are unable to see how we could say that it was a physical impossibility for the wire to have become caught in the roller, in substantially the way in which plaintiff's son says that it did. With the conflict of the testimony respecting this matter we have naught to do, unless the situation is such that we could and should say that the evidence adduced by plaintiff concerning the manner in which his son was injured is directly and wholly contrary to physical laws and for that reason unworthy of belief. It is quite true that we might reject the testimony of plaintiff's son, as being wholly lacking in probative force, if it were plainly and palpably incompatible with physical laws or undisputed physical facts. But clearly no court should proceed to thus wholly disregard positive testimony, unless the situation is one so plain, simple and clear as to admit of no conclusion other than that such testimony is demonstrated to be utterly false by the physical facts appearing. The rule has been applied in cases where a plaintiff, with good eyesight, declared that he looked for but did not see an approaching train, in broad daylight, which was in fact at the time in his plain, unobstructed view, close at hand, as in Kelsey v. Railroad Co., 129 Mo. 362, 30 S. W. 339; Schaub v. Railroad, 133 Mo. App. 444. 113 S. W. 1163, and Payne v. Railroad, 136 Mo. 562, 38 S. W. 308, and many other cases; and to many other situations where the testimony was absolutely and wholly refuted by the conceded or uncontroverted physical facts. [See

Nugent v. Milling Co., 131 Mo. 241, 33 S. W. 428;
Scroggins v. Street Railway Co., 138 Mo. App. 215,
120 S. W. 731.] Numerous other authorities might be
referred to in this connection, but to do so would serve
no useful purpose. We take it that no authority may
be found for applying such doctrine except to a situa-
tion which, upon its face, plainly and clearly demon-
strates that the testimony in question cannot be true.

In the instant case we have to deal with a some-
what intricate machine, the construction and operation
of which is not made fully clear, in all of its details,
by the evidence adduced. It is not contended that we
are bound to accept the opinions of defendant's wit-
nesses to the effect that the roller could not have been
worn in such manner as to catch and break the wire;
but it is contended that the movement of this frame,
carrying the two rollers above mentioned, and the vi-
bration of the rapidly moving wire, would necessari-
ly prevent the roller, under any circumstances, from
wearing down in a narrow groove, such as would catch
and break a wire such as that with which plaintiff's
son was working. But we are not prepared to give
to this phase of the matter the importance ascribed to
it by learned counsel for defendant. It is natural to
suppose that the movement of this frame would have
some effect upon the wearing of the rollers which it
carried; but just what precise effect it must necessari-
ly have had it is impossible for us to say. Plaintiff's
son says that the frame moved "the least bit," and if
this be true the effect of such movement upon the
wearing of the roller might be of small consequence.
That a wire broke upon this machine at the time is in-
dicated by testimony of defendant's foreman, as well
as by that of plaintiff's son. The roller in question
was not preserved, and was not in evidence below.
There was nothing, therefore, in the way of positive
evidence to show just how this pulley had become
worn, beyond the testimony of plaintiff's son. Under

the circumstances we cannot say that that testimony should be rejected.

And if plaintiff's evidence may be accepted as to the manner in which his son was injured, it is not contended that the evidence did not make out a case of negligence on the part of the master. That is to say, if the wire did in fact sink into this roller, and if plaintiff's son, inexperienced in this work, repeatedly sought the aid of the foreman and was each time told that he must get the wire out and splice it, as best he could, without instruction or warning of any sort, it is not argued that this would be insufficient to make a prima-facie case against defendant. And there appears to be no room for such contention.

Upon the whole we think that the demurrer was well ruled.

II. At plaintiff's instance the court gave the following instruction:

"The court instructs the jury that if you find and believe from the evidence that on the 22d day of March, 1910, the plaintiff, Michael Warnke, was the father of Leo Warnke, that on said date, he resided with his said father, and still resides with him, that on said date Leo Warnke was a minor over sixteen and under seventeen years of age and was in the employ of the defendant A. Leschen & Sons Rope Company as a common laborer, and if you further find that one George Keisker was at said time in the employ of the defendant, A. Leschen & Sons Rope Company as a foreman in its factory, and by virtue of his employment and position had immediate control and direction of the plaintiff's said son and others engaged in work in said factory, and had authority to control and direct the work of Leo Warnke, then in that case you are instructed that the said foreman in giving orders to plaintiff's said son and in directing and controlling his work was the vice-principal of defendant, A. Leschen & Sons Rope

Company, and it became and was the duty of the defendant and its foreman, while acting in his capacity, as foreman, to exercise reasonable care in giving orders to plaintiff's son and to exercise reasonable care not to order plaintiff's son to do work that was not reasonably safe; and in case you find and believe from the evidence that the said foreman on the 22nd day of March, 1910, ordered the plaintiff's son to splice the broken wire in question, and you find and believe from the evidence that the pulley in question over which the wire in question passed was defective and out of repair, and if you find and believe from the evidence, that on account of said pulley being defective and out of repair, said wire caught in said pulley and broke, and if you further find from the evidence that in attempting to splice said wire, it sank into and caught in said defective pulley and thereby caused said wire to pull out of the plaintiff's son's grasp or his grasp to pull from said wire and said wire to recoil, strike, and injure his son, and if you find and believe from the evidence it was not reasonably safe work in which to order a boy of his age, judgment and experience to do, and that the defendant's foreman knew, or by the exercise of ordinary care might have known, of the unsafe character of the work of pulling and attempting to splice the wire when caught in the pulley, if you find it was caught, then it was the duty of the foreman to instruct the plaintiff's son, Leo Warnke, in respect thereto, that the plaintiff's son might conduct himself so as to guard against such danger, and if you further find that said foreman neglected to so instruct him and that while plaintiff's son was trying to splice the wire pursuant to the direction of said foreman, if you believe from the evidence said foreman did so direct him, he was injured by reason of the want of reasonable care of the defendant's said foreman, in ordering a boy

of the age of plaintiff's son and experience under the circumstances in evidence, to splice the broken wire in question, by reason of his youth, want of experience and judgment as to the perils of the work of splicing the wire, and that the plaintiff's son did some act in the discharge of his duty as he understood it, such as a boy of his age, judgment and discretion might reasonably have done, which caused the injury and which he did not know to be likely to injure him and had not been properly advised and instructed thereabout by the foreman, plaintiff is entitled to recover.''

The first insistence is that this instruction is ''drawn in a loose, rambling fashion, does not clearly define the issues,'' and that the length thereof, and the involved sentences therein contained, were such as to confuse the jury as to the issues on trial. As to this we think that it need only be said that while the instruction appears to be unnecessarily long, somewhat lacking in clearness, and should not by any means be taken as a model, we are not prepared to say that it was such as to mislead or confuse the jury.

The next insistence is that the instruction assumes that the roller or pulley in question was defective. This is predicated upon that part of the instruction wherein it is said: ''And if you further find from that evidence that in attempting to splice said wire it sank into and caught in said defective pulley,'' etc. And it is also said that the instruction assumes that the wire broke. But it is quite apparent that there is no merit in the contention that the instruction assumes these things to be true. The early part of the instruction requires the jury to find ''that the pulley in question over which the wire in question passed was defective and out of repair'' and ''that on account of said pulley being defective and out of repair, said wire caught in said pulley and broke.'' [See Bradley v. Railway Co., 138 Mo. 293, 39 S. W. 763; Garard v.

Coke & Coal Co., 207 Mo. 242, 105 S. W. 767; Pende-grass v. Railway Co., 179 Mo. App. 517, 162 S. W. 712]

It is further urged that the instruction is erroneous in that it is broader than the pleadings and the evidence. It is said that plaintiff's case was bottomed, so far as concerns the condition of the pulley, upon a notch or grove being worn by a small wire so that a larger wire caught therein; while under the instruction the jury could find that the pulley was defective in any particular whatever. But we think that this contention cannot be upheld. The petition alleges that the pulley was ''badly worn, out of repair and unfit for use, and the wire in question would sink into and catch therein, thereby causing said wire to break; . . . and that it was dangerous to splice said wire because of the difficulty of putting such broken wire over and under the said defective, out of repair and unfit pulley, over and under which said wire passed in that said wire would sink into and catch in said badly worn, defective and unfit pulley,'' etc. Plaintiff's evidence is that the pulley was defective on account of a groove worn therein, into which the wire sank and became caught. The instruction requires the jury to find that the pulley was defective and out of repair, and that on account thereof the wire became caught in the pulley and sank into it. While the language of this portion of the instruction is not entirely free from criticism, it appears to require the jury to find the sort of defect in this pulley which plaintiff charged and which was shown by his evidence, viz., a defect such as would permit or cause the wire with which plaintiff was working to sink into the pulley and become fastened. Furthermore, the gravamen of the charge of negligence is the negligent order of the foreman, in the premises, without instructions or warning to plaintiff's son.

The instruction is further assailed upon the ground that it was error to submit to the jury the question of whether or not it was reasonably safe to order plain-

tiff's son to undertake to splice the wire under the circumstances, for the reason that there was no evidence to support this part of the instruction. But clearly the evidence was such as to make this a question for the jury.

It is also urged that there was no evidence whatever tending to show that plaintiff's son needed instruction; and that the instruction in fact did not require the jury to so find, but made it the absolute duty of the defendant to instruct the boy, regardless of whether such was necessary or not. But a reading of the instruction sufficiently disposes of the contention that it does not require the jury to find that instruction was necessary. And the evidence was plainly such as to warrant a finding on the part of the jury that plaintiff's son needed instruction with reference to the doing of the very thing which he claims resulted in his injury, and that he repeatedly appealed to the foreman for such instruction and guidance, but received none.

Plaintiff's second instruction is assailed, but the questions thus raised are either disposed of by what we have said above as to plaintiff's first instruction or do not warrant discussion.

The two instructions given for plaintiff on the question of liability, when read and considered together, we think fairly covered the case, and contained no reversible error—no error, in our belief, materially affecting the merits of the action. [Sec. 2082, Rev. Stat. 1909.]

III. The instruction on the measure of damages is assailed in several particulars; and it is claimed that the verdict is excessive. These two assignments of error may be disposed of together.

The instruction authorized a recovery for doctors' bills, not exceeding $100; for hospital bill, not exceeding $25; and for "car fare," not exceeding $16.20. It

then authorized a recovery of such sum as the jury might believe from the evidence plaintiff would reasonably sustain "by way of loss of services, wages or salary of his said minor son, if any, from the time of his said son's injuries, if any, until he attains the age of twenty-one years of age, and directly caused by his son's injuries, taking into consideration the earning capacity of the boy in his injured condition and deducting that amount from his probable and reasonable gross earnings had he not been injured, and also taking into consideration the possibility of the death of his son, Leo Warnke, that is on the question of his earnings, before his arrival at the age of twenty-one years, not to exceed $5300."

There is no dispute as to the item of $100 for doctors' bills. As to the hospital bills, the petition avers a loss of $25 on this account, while the proof was that the bill was $24. There is no averment in the petition as to the amount of car fare expended; but plaintiff's testimony is that this item of expense amounted to sixty cents per day for three weeks, a total of $12.60. It is said that the instruction is erroneous in allowing a recovery on the two last-mentioned items of $4.60 more than is shown by the proof. But the limit of recovery placed by the instruction upon each of these items is within the pleadings. And we do not think that we ought to assume that a jury of twelve men, presumably intelligent, wholly disregarded the evidence and assessed the limit permitted by the instruction to be assessed upon these items, when the verdict does not in any manner so indicate. We think that no reversible error was committed in this regard (see Shinn v. Railroad, 248 Mo. 173, 154 S. W. 103); but the matter will be touched upon later.

It is insisted that it was error for the court to authorize a recovery by plaintiff for the future loss of his son's earnings during the latter's minority, for the reason that there was no evidence tending to show that

at the time of the trial the earning capacity of plaintiff's son was lessened by the loss of his eye, or that any diminution of earning power would result therefrom in the future. And it is claimed that the verdict is excessive by reason of being predicated in part upon such future loss of earnings, as well as on account of excessive allowances on account of the hospital bill and car fare.

It may be said that the evidence does not appear to show a diminished earning power, whereby loss would result to plaintiff beyond the time of the trial below. It does appear that plaintiff lost earnings of his son prior to the trial, resulting from the injury. In this respect a substantial loss was shown, but there appears to be no evidence tending to show that after plaintiff's son had entirely recovered from the effect of the injury and from the operation whereby his injured eye was removed, his earning capacity was diminished by the loss of the eye. But it remains to be seen whether or not the judgment should be reversed on this account.

The evidence discloses that at the time of his injury plaintiff's son was earning eight dollars per week. As to how long he was incapacitated for work on account of his injury the evidence is quite meager. He testified: ''I was laid up from this injury six months and more. Since I was injured I have been able to work about nine months, I guess, nine or ten months. 1 never just kept track of it.'' He was injured on March 22, 1910, and the cause was tried below on January 28, 1913. The boy says that he was able to work, during the intervening time, but nine or ten months, and that his wages differed at different times; that when he began to work again, at another factory, he earned six dollars per week for the first month, then seven dollars per week, and later twelve dollars per

186MoApp4

week. He was earning twelve dollars per week at the time of the trial.

Learned counsel for appellant have furnished us with a computation showing, as claimed, the extent to which plaintiff is entitled to recover, if at all, under the evidence. Figuring the boy's earnings at eight dollars per week, which he was receiving when injured, it is said that had plaintiff's son not been injured he would presumably have earned $736 from the time of his injury to the time of the trial; that adding to this $100 for doctors' bills, $24 for hospital bills, and $12.60 for car fare expended, the total would be $872.60. From the last-mentioned amount learned counsel then deduct the amount estimated to have been actually earned by the boy during this period, according to the latter's testimony. This is arrived at by estimating that the boy's average earnings amounted to eight dollars per week for the period of nine months during which he says that he was able to work between the date of the injury and the date of the trial, amounting to a total of $288. Deducting this sum from $872.60 leaves $584.60, which counsel say is "the actual loss sustained by plaintiff on account of his son's injury, including all elements, between the date of injury and the date of trial." It is therefore urged that, if we cannot agree with counsel that the cause should be reversed, appellant is in any event entitled to a remittitur of $415.50.

But unfortunately for appellant, the foregoing computation is based upon an error vitally affecting the result. In making such computation counsel have taken January 19, 1912, as being the date of the trial below; whereas that was in fact the date of the institution of the suit, and the trial was not had until January 28, 1913, more than a year after the filing of the petition. We think that we may properly adopt the above-mentioned method of arriving at plaintiff's loss prior to the trial below. In doing so, we do not say that the earnings of plaintiff's son after he became able

to work and prior to the trial should be averaged at eight dollars per week, when in fact he was receiving different amounts during different periods of such time, and with no evidence to show for what length of time he received any specific amount. But he was earning eight dollars per week when injured, and as the evidence fails to show that he averaged more than this amount per week for the period during which he was able to work, following the injury, it appears to be proper to base the entire computation upon earnings at eight dollars per week, as counsel have done. So doing, we find that from the date of the injury to the date of the trial, two years, ten months and six days elapsed, amounting to almost exactly one hundred and forty-eight weeks. Plaintiff's son says that during this time he worked about nine months—nine or ten months. Taking this at nine months, as the jury were at liberty to do, and as counsel have done, it amounts to thirty-nine weeks. This deducted from the one hundred and forty-eight weeks elapsing between the date of the injury and the date of the trial, leaves one hundred and nine weeks. Plaintiff's loss, therefore, for this period of one hundred and nine weeks, at eight dollars per week, amounts to $872. Adding to this the doctors' bills, $100, hospital bill, $24 and car fare, $12.60, we have a total of $1008.60.

It therefore appears that, adopting this general method of arriving at plaintiff's loss of earnings, and which appears to be well enough, the evidence is such as to sustain a verdict for plaintiff, on account of all items of loss to him, in excess of $1000, the amount of the verdict and judgment herein. This, of course, includes nothing by way of loss of future earnings, i. e., beyond the date of the trial. It therefore appears that any error in authorizing a recovery on account of such future loss of earnings is harmless, and not reversible error. It does not appear that appellant has been in any respect injured or prejudiced thereby. We do not

regard it, under the circumstances, as error "affecting the substantial rights of the complaining party" (Sec. 1850, Rev. Stat. 1909); nor do we *believe* it to be error "materially affecting the merits of the action." [Sec. 2082, Rev. Stat. 1909. See Shinn v. Railroad, *supra.*]

And by the same reasoning, if any error inheres in the instruction on account of the limit of recovery authorized on account of hospital bill and car fare, which we do not say, it is likewise rendered harmless, and not reversible error.

Our conclusion is that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.