254 S.W.2d 993 (1952)
JOHNSTON
v.
OWINGS.
No. 21781.
Kansas City Court of Appeals, Missouri.
December 8, 1952.
*994 Roland B. Miller, Jr., Platte City, Robert S. McKenzie, Jack G. Beamer and Stubbs, McKenzie, Williams & Merrick, Kansas City, for appellant.
David R. Clevenger, Platte City, Price Shoemaker and Elmer E. Reital, St. Joseph, for respondent.
SPERRY, Commissioner.
This is a suit for personal injuries and property damages sustained by Otis Johnston when his truck came into collision with the truck of defendant, Robert Owings. A jury trial terminated in a verdict and judgment in favor of plaintiff in the amount of $2800. Defendant appeals.
Plaintiff was driving a 1½ ton truck loaded with 11 head of cattle, weighing 7700 pounds. Defendant was operating a 1½ ton truck loaded with 5 tons of sacked feed. The trucks were traveling eastward, on Highway 36, which is straight and level at that point for a distance of ½ mile or more.
Plaintiff testified to the effect that, as he traveled eastward down a hill, some 2100 feet west of the point of collision, a Mercury automobile, driven by a Mr. Hainline, passed his truck; that the heavy load of cattle caused the truck to sway and caused the car and truck to sideswipe; that the Mercury, after it passed, slowed down; that he attempted to slow the truck but, because of its weight and the type of load, he could not slow it sufficiently to avoid running into the Mercury; that he steered to the north slab to pass the Mercury; that he gave no signal of any kind, had not sufficient time to look behind him or to give any signal; that he was watching to see what the Mercury did; that defendant's truck struck the left portion of the rear end of plaintiff's truck, demolishing the rear end, driving the platform forward, denting in the cab, and springing the frame. The cost of repairing the truck was in excess of $600, and plaintiff suffered personal injuries.
Mr. Schmidt repaired the truck and stated that the nature and amount of damage was about as related by plaintiff.
Mr. Barwold stated that he was operating a cattle truck, loaded with 11 head of steers, some distance west of plaintiff, on Highway 36; that defendant passed him at a point probably a mile west of the hill mentioned; that after he passed the top of the hill he could see defendant's truck, some ¼ mile east; that he saw plaintiff's truck turn out to pass the Mercury, and saw defendant's truck attempt to pass plaintiff's truck; that plaintiff's truck, when struck, was headed east and slightly north on the north slab; that defendant's truck was headed east and north but about half on the north shoulder; that the right front corner of defendant's truck bed struck the left rear of plaintiff's truck bed; that a truck bed is about 8 feet wide whereas the cab is only about 5 feet wide; that the bed extends out further than does the outside of the cab; that all of plaintiff's truck was on the pavement, and traveling at a speed of about 40 miles per hour; that defendant's truck turned over on its right side, then came up on the wheels, and laid over on its left side on the north shoulder; *995 that plaintiff's truck stopped on the pavement.
Defendant testified to the effect that he first saw plaintiff's truck going up a hill ahead of him; that there was a Mercury car immediately behind it, and a Plymouth behind the Mercury; that as he approached the top of the hill, which was flat topped, he saw the Mercury pass plaintiff; that plaintiff's truck weaved to the left hand side of the road, at a point about 1000 feet from the county line; that the Mercury passed and came back to the south side of the pavement; that shortly thereafter defendant sounded the horn and passed the Plymouth car; that all vehicles were gaining speed, going down grade; that he continued on intending to pass the truck in the same operation; that plaintiff's speed was about 40 miles per hour and defendant was traveling 45 miles per hour; that as the front bumper passed the rear wheels of plaintiff's truck, his truck "turned to me. I turned with him and applied my brakes * * *. I turned with him and turned onto the shoulder * * * went too far and it tipped over, * * * catching the bumper in the rack at about the rear wheels, and tipped defendant's truck over, spilling its load;" that it then came back onto its right side, on the south shoulder; that defendant could have avoided the collision if plaintiff had not crowded onto the shoulder; that no headlights of his truck were broken, no damage to the front end except to the bumper; that he was alongside plaintiff's truck when it turned into his truck; that, after the collision, the Hainline car was sitting on the pavement, west of the trucks; that he was trying to pass before reaching a bridge so that he would not have to "pull" a hill at 30 miles per hour.
Mr. Hainline, driving a Mercury car, stated that he overtook plaintiff's truck at the top of the hill; that it was traveling at a speed of 40 miles per hour; that he, Hainline, passed the truck at a point about 150 feet east of the summit of the hill; that as he drew alongside the truck he heard a crash or bump and knew that something had happened; that, after proceeding about 150 feet further, he pulled over to the right hand side and began to slow down; that he "patted" his brakes, to signal slowing down, but permitted the compression of the engine to slow the car; that he heard a crash and the two trucks slid past him; that when cattle and feed started flying he applied his brakes and stopped; that his car suffered some minor damage, from being sideswiped as it passed plaintiff's truck.
Plaintiff pleaded 10 grounds of negligence, but submitted only 2. Seven of these specifications, defendant contends, constituted allegations of specific negligence and 3, including the 2 submitted, constitute allegations of general negligence.
Plaintiff contends that all of his specifications were allegations of specific negligence. He submitted his case on the following specifications, to-wit: (a) that defendant failed to keep a reasonably careful and vigilant lookout for other vehicles on the highway and, (b) that he carelessly and negligently allowed the front end of his truck to run into and collide with the rear of plaintiff's truck. By the submission of these specifications plaintiff abandoned all others pleaded. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93.
Plaintiff's main instruction Number 1, is as follows: "The Court instructs the jury, that if you find and believe from the evidence that at the time mentioned in evidence plaintiff, Otis Johnston, was driving a truck, in the exercise of the highest degree of care, in an easterly direction on U. S. Highway No. 36, at a point one-tenth mile east of the Buchanan-De Kalb County line in De Kalb County, Missouri, and that defendant, Robert Owings, was operating his truck in an easterly direction and to the rear of plaintiff's truck; and that defendant, Robert Owings' truck overtook the plaintiff's truck, if you so find, and that defendant, Robert Owings negligently and carelessly failed to keep and maintain a reasonably careful and vigilant lookout for other vehicles upon said highway and negligently and carelessly allowed the front of his truck to run into and collide with the rear of plaintiff's truck, if you so find, and if you further find that defendant, Robert Owings in carelessly and negligently failing *996 to keep and maintain a reasonably careful and vigilant lookout and in negligently and carelessly allowing the front of his truck to run into and collide with the rear of plaintiff's truck, was negligent; and that as a direct result of such negligence, if any, defendant's truck was caused to collide with plaintiff's truck, if you so find, and if you further find that as a direct result of said collision plaintiff was injured and his truck damaged, if you so find, then and in that event the plaintiff is entitled to recover and your verdict must be in favor of the plaintiff and against the defendant, Robert Owings."
Although specific negligence, it is conceded, was pleaded in several specifications, defendant contends that general negligence, only, was submitted. If that contention be upheld the judgment cannot stand. Hoeller v. St. Louis Public Service Company, Mo. App., 199 S.W.2d 7, 10.
Plaintiff does not contend that the law is otherwise than as stated above. However, he contends that specific negligence only was charged; and that specific negligence was submitted, to-wit: that defendant carelessly and negligently allowed the front of his truck to collide with the rear of plaintiff's truck. The charge of failure to keep a lookout is one of specific negligence and, if not justified under the evidence, was not error because submitted in the conjunctive. Webster v. International Shoe Company, Mo.App., 18 S.W.2d 131, 133; Spencer v. Kansas City Public Service Company, Mo.App., 250 S.W.2d 187, 191.
In a case where the facts in evidence are quite similar to those here it was held that an allegation of allowing the front end of a vehicle to collide with another vehicle is one of specific negligence. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 70. In that case the jury was authorized to find negligence if defendant's streetcar overtook plaintiff's automobile and "`the operator of the streetcar negligently and carelessly allowed it to run into and collide with the rear end of the automobile'".
In the case at bar, plaintiff's theory was (and there was evidence to support his theory) that defendant's truck overtook plaintiff's truck while the latter was in the act of passing the Hainline car, and that defendant carelessly and negligently allowed the front end of his truck to collide with the rear end of plaintiff's truck. Another similar instruction was held to submit specific negligence, in the case of Jones v. Central States Oil Company, 350 Mo. 91, 164 S.W.2d 914, 916.
It is urged that insufficient facts were hypothesized in the instruction at bar, citing Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541. If the facts hypothesized in the two cases mentioned in the preceding paragraph were submitted, the facts here hypothesized were sufficient. The factual situation was not unduly complicated. There was evidence to the effect that plaintiff was traveling in the north traffic lane, passing the Hainline car, when defendant's truck, traveling in the same traffic lane, overtook it. The negligence specified was that defendant carelessly and negligently allowed the front of his truck to collide with the rear of plaintiff's truck. See Hoeller v. St. Louis Public Service Company, Mo.App., 199 S.W.2d 7, 9, par. 3-4, supra.
We could not say, as a matter of law, that either truck did not have a right to be in the north lane. Defendant testified to the effect that his truck had previously passed a Plymouth car and was straightened out in the north traffic lane, where he intended to pass plaintiff's truck. Barwell stated that the right front of defendant's truck bed struck the left rear of plaintiff's bed. That testimony and other evidence in the case was sufficient to take the case to the jury. Rosenblum v. St. Louis Public Service Company, Mo.App., 242 S.W.2d 304; Spears v. McCullen, supra; Jones v. Central States Oil Company, supra. Sufficient facts were hypothesized to inform the jury as to what the real issue was.
Defendant contends that plaintiff's recovery is barred by reason of contributory negligence. He submitted this issue and the jury found against him; but he contends that plaintiff's own testimony proves that he was contributorily negligent. Plaintiff *997 testified to the effect that he was hauling 11 steers weighing 700 pounds each; that they caused the truck to sway so as to cause it to sideswipe Hainline's car as it passed him; that he was then driving at the rate of between 40 and 45 miles per hour; that, at 50 miles per hour he could have stopped his truck, under the conditions then prevailing, within 450 feet; that, after the Hainline car passed, plaintiff slowed his truck to 30 miles per hour; that the Hainline car was slowing down faster than he could, so he took his foot off of the brake and pulled out to pass him instead of stopping; that he did not look to see if the lane was occupied, or if it would be safe for himself and others; that he failed to give any signal. However, he said that he was watching the Hainline car, to see what it would do, and that he did not have time to sound any warning. It may also be inferred, from the evidence, that too rapid a stop would have thrown the cattle forward into the cab. One required to act suddenly and in the face of imminent danger need not act as if he had time for deliberation and full exercise of judgment. Carter v. Wells, Mo.App., 40 S.W.2d 725, 726.
Of course one cannot, himself, negligently create a dangerous situation and then escape the consequences thereof under the above rule. Moore v. East St. Louis & Suburban R. Co., Mo.App., 54 S.W.2d 767, 771. Whether or not the truck was overloaded, or being driven at a high and dangerous rate of speed which created the emergency, we cannot say, as a matter of law. Barwell's truck was loaded just as was plaintiffs and, from the evidence, was being driven at about the same rate of speed. Defendant's truck was loaded heavier than was plaintiffs (although with a different type of merchandise) and was proceeding, on the whole, at a much higher rate of speed than was plaintiffs.
Whether or not plaintiff was guilty of negligence in attempting to pass the Hainline car instead of stopping, under all of the circumstances, was for the jury to say. We could not say that his conduct was such, under the circumstances shown, that fair minded men of ordinary intelligence must agree that he was negligent in acting as he did. Hathaway v. Evans, Mo.App., 235 S.W.2d 407, 412.
Defendant contends that plaintiff improperly and erroneously injected insurance into the case.
Before the trial began, and out of the hearing of the jury, plaintiff's counsel asked counsel for defendant if he were employed by any insurance company, to which counsel answered "Yes, * * * Farmer's Mutual Automobile Insurance Company of Madison, Wisconsin." Thereafter, the following record was made on voir dire examination:
"Mr. Clevenger: I will get you to state if you will, if you are policy holders or agents of an insurance company that is named Farmer's Insurance Company of Madison, Wisconsin. Farmers' Insurance (to Mr. McKenzie, counsel for defendant). Is that correct? Is that the correct name of the company?
"Mr. McKenzie: Farmer's Mutual Automobile Insurance Company is the correct name of the company. Come here, Mr. Clevinger."
(Out of the hearing of the jury). "Mr. McKenzie: Defendant objects to the form of the question, * * *; his failure to state the name of the insurance company; his turning to me and asking the correct name of that insurance company, all of which was designed to emphasize the fact that I represented an insurance company, * * * It is prejudicial and defendant moves to discharge the jury. * * *
"The court: I think it was improper. Counsel should inform himself, if he wants to ask about the insurance company or its name * * *. I am going to deny the motion to discharge the panel. * * *
"The court: I am going to ask the jury that question." Thereafter, the court inquired of the jury as to their connection with the above-named insurance company.
Generally, the only reason for permitting inquiry of the jury on this subject is to permit the parties to the suit, in good faith, to be informed as to the interest jurors might have in the outcome of the case, if any are interested in an insurance company *998 which might benefit thereby; to aid the parties in making a choice between the qualified jurors. Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, 540.
In ruling this point we recognize the force of the above rule, which has been reiterated in many decisions; but the proper handling of "insurance" in cases of this kind, frequently, is difficult for trial courts, as well as for appellate courts.
In the case at bar, we cannot say, from the record, that counsel for plaintiff acted in bad faith, especially so in view of the prompt and intelligent reaction of the trial judge. Indeed, in view of the whole record, we must indulge the presumption that counsel acted in good faith. Jablonowski v. Modern Cap Mfg. Company, 312 Mo. 173, 201, 279 S.W. 89; Wendel v. City Ice Company of Kansas City, 224 Mo.App. 152, 159, 22 S.W.2d 215.
The trial judge has the power to exercise a sound discretion on the voir dire examination of jurors on the matter of insurance in cases of this kind. May v. Hexter, Mo.App., 226 S.W.2d 383, 385; Gerran v. Minor, Mo.App., 192 S.W.2d 57, 61. We do not find that the trial court has abused his discretion.
It is next charged that the court erred in giving plaintiff's instruction No. 2, on the measure of damages. It is said that there was no evidence of injury, except the testimony of plaintiff alone. However that may be, it is the law that the testimony of plaintiff alone, unsupported by medical evidence, is sufficient upon which to base a measure of damage instruction, including future pain and suffering. Brown v. Campbell, 240 Mo.App. 182, 219 S.W.2d 661, 662.
It is also urged that there was no evidence tending to prove that plaintiff suffered mental anguish, or that he will suffer mentally or physically in future, or will suffer future loss of earnings. It is error for an instruction to allow damages not supported by evidence, Spears v. St. Louis Public Service Company, Mo.App., 202 S.W.2d 578; but in the Spears case there was far less evidence upon which to base an instruction of this kind than appears in the case at bar.
Plaintiff's testimony was to the effect that he did not know that he was hurt until the morning after the collision; that his back pained him and he could scarcely arise; that his legs failed to function properly; that, after idling for two days, on the fifth day he visited an osteopath; that he visited this doctor seven or eight times and was off of work for a month; that he began wearing a brace, and still wore it at the time of the trial, one year and eight months after the accident occurred; that if he did not have the brace he could not lift without throwing his back out of place; that recently, in scooping corn, his back bothered him even with the brace on. X-ray pictures disclosed a defect of the fifth vertebra which, he claims, is a fracture received in the collision. He was earning about $100 per week when the accident occurred and operated his own truck, as an occupation. Damages to plaintiff's truck amounted to more than $600.
The above is sufficient evidence upon which to base an instruction authorizing a verdict for future pain and suffering and for future loss of earnings. Brown v. Campbell, supra. The award fairly represented the damages as shown by the evidence and we will not hold it prejudicially erroneous because of technical defects, if any. Warnke v. A. Leschen & Sons Rope Company, 186 Mo.App. 30, 51, 171 S.W. 643; Abbit v. St. Louis Transit Company, 106 Mo.App. 640, 645, 81 S.W. 484; Lowder v. Kansas City Rys. Co., Mo.App., 221 S.W. 800, 801.
The judgment should be affirmed.
BOUR, C., concurs.
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.