## BERTIE E. HAYWOOD, Respondent, v. JACOB KUHN, Appellant.

St. Louis Court of Appeals, November 12, 1912.

1. **DAMAGES: Special Damages: Personal Injuries: Pleading: Sufficiency of Allegations.** A petition, in an action for personal injuries, alleging that " . . . her nervous system disordered, shocked and also greatly injured internally," sufficiently set out a claim for internal injuries, and hence proof of injury to the uterus was admissible.

2. **LANDLORD AND TENANT: Negligence: Injury to Tenant: Condition of Premises: Question for Jury.** In an action against a landlord for injuries to the tenant's wife, caused by a defect in the premises, whether the premises were in the same condition at the time of the accident as when rented, *held* a question for the jury; *held*, *further*, that whether plaintiff assumed the risk of injury, by reason of the premises being, to her knowledge, in the same condition when they were rented as when she was injured, was also a question for the jury.

3. ———: ———: ———: ———: **Contributory Negligence: Question for Jury.** In an action against a landlord for injuries to the tenant's wife, caused by a defect in the premises, whether plaintiff was guilty of contributory negligence, *held* a question for the jury.

4. ———: ———: ———: ———: **Instructions.** In an action against a landlord for injuries to the tenant's wife, caused by her stepping into an uncovered drain pipe on the premises, *held* that the negligence alleged in the petition was practically covered by the instructions summarized in the opinion; *held*, *further*, that the question of plaintiff's contributory negligence was covered by the instructions summarized in the opinion.

5. ———: ———: ———: ———: **Instructions: Commentary on Evidence.** Where, in an action against a landlord for injuries to the tenant's wife, caused by a defect in the premises, the evidence showed that the landlord was a nonresident and that the premises were in the immediate care of his son as agent, an instruction, that if the son, at the time of the accident and prior thereto, was the agent of the landlord and had knowledge of the condition of the premises a reasonable length of time prior to the date of the accident, his knowledge was notice to the landlord, was not objectionable as an undue comment on the evidence, or as singling out a particular fact in evidence.

6. **DAMAGES: Measure of Damages: Instructions.** An instruction on the measure of damages, in an action for personal injuries, that "if the jury find a verdict for plaintiff, you are, in estimating her damages, to consider any change in her physical condition which you may believe from the evidence resulted from the injury to her; the physical or mental anguish, if any, suffered by her on account of her injuries at the time of and since such injuries, as shown by the evidence, and such damages, if any, as you may from the evidence find it is reasonably certain she will suffer in the future therefrom; and you will find a verdict for such sum as in your judgment will under all the evidence reasonably compensate her for such injuries, including compensation for such sums of money, if any, as the evidence shows she herself has heretofore paid out for medicines, nursing and medical treatment, but not including any amount not already actually paid by her" sufficiently defines the measure of damages.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

AFFIRMED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.* for appellant.

(1) The testimony tending to prove that the uterine trouble of the plaintiff is permanent was clearly incompetent. The petition contains no allegation of such injury or that the same is or will be permanent. This was not an issue in the case. Hartt v. McNeill, 47 Mo. 526. (2) The instructions directing a verdict in favor of the defendant asked by defendant should have been given. The property was in the same condition at the time of the letting to plaintiff's husband as it was at the time of her injury and she knew it and therefore assumed the risk of using the property in that condition. Moynihan v. Allyn, 162 Mass. 270; Quinn v. Perham, 151 Mass. 162; Shute v. Bills, 191 Mass. 433. In an action for damages for personal injuries, founded on negligence, the plaintiff cannot recover if his own negligence directly contributed to

his injury. Holwerson v. Railroad, 157 Mo. 216; Boyer v. Railroad, 168 Mo. 583; Reno v. Railroad, 180 Mo. 469; McLeland v. Transit Co., 105 Mo. App. 473; Wallach v. Transit Co., 123 Mo. App. 160. Plaintiff's own want of care directly contributed to her injury and forbade a recovery on her part. McGinn v. French, 107 Wis. 54; Gallagher v. Button, 73 Conn. 172; Martin v. Surman, 116 Ill. App. 282; Purcell v. English, 86 Ind. 34; Vorrath v. Burke, 63 N. J. 188; Shackford v. Coffin, 95 Me. 69; O'Dwyer v. O'Brien, 43 N. Y. Supp. 815; Reams v. Taylor, 31 Utah, 288. (3) Instruction No. 2, given for the plaintiff, singles out the testimony of Edward Kuhn and is a comment on it to the jury and should therefore not have been given. Barr v. Kansas City, 105 Mo. 559; Smith v. Anthony, 96 Mo. App. 420. It singled out a particular fact in the evidence and gave undue prominence to it and was therefore erroneous. Eckhard v. Transit Co., 190 Mo. 593; Gharst v. Transit Co., 115 Mo. App. 403; Landrum v. Railroad, 132 Mo. App. 717. (4) Instruction No. 3, given for the plaintiff is clearly erroneous. It directed the jury in estimating her damages "to consider any change in her physical condition" resulting from her injuries. In this respect the instruction was not confined to the issues. Maguire v. Transit Co., 103 Mo. App. 459; Wallack v. Transit Co., 123 Mo. App. 160; State ex rel. v. Dieckman, 124 Mo. App. 653; Feddeck v. Car Co., 125 Mo. App. 24. It also directed the jury in estimating plaintiff's damages to consider "such damages, if any," as the jury might believe from the evidence it is reasonably certain plaintiff would suffer from her injuries in the future, without undertaking to define the term "such damages." In this respect the instruction again was not confined to the issues, was entirely too general and afforded the jury ample opportunity for speculation as to what damages the plaintiff might, in the future, sustain by reason of her injuries. Badgley v. St.

Louis, 149 Mo. 122; Camp v. Railroad, 94 Mo. App. 272; Jacquin v. Cable Co., 57 Mo. App. 320; McGowan v. Ore & Steel Co., 109 Mo. 518; Hawes v. Stock Yards Co., 103 Mo. 60. This instruction was also misleading as to the measure of damages and should not have been given. Feiner v. Nichols, 158 Mo. App. 539; Zumwalt v. Air Line, 71 Mo. App. 670.

*E. Rosenberger & Son* and *Kurt Von Reppert* for respondent.

(1) There was no error in permitting the witness, Doctor George S. Jackson to testify that in his opinion the uterine trouble of the plaintiff was permanent. Plaintiff without objection had been permitted to describe her condition. So had the doctor. The averments of the petition were broad enough to admit the evidence objected to. If error was committed it was harmless. (2) Plaintiff's instruction No. 2 correctly declared the law and was no comment on the testimony. (3) Instruction No. 3 was a correct declaration of the law on the measure of damages and has received the approval of our Supreme Court. If the instruction is subject to criticism the giving of it was harmless error and would not warrant a reversal. Curtis v. McNair, 173 Mo. 270. (4) Defendant's demurrers at the close of plaintiff's evidence and at the close of all the evidence were properly overruled. Whatever may be the rule in other jurisdictions, in this State it has been well settled that where several portions of a property are let to different tenants, with a part in common for the use of them all, the obligation is imposed by law on the landlord to exercise reasonable diligence to keep such common portions of the property in a reasonably safe condition for such purposes as may reasonably be anticipated to be a proper use of the property, and for his failure to perform that duty the law attaches to the landlord liability for injury to such tenant or

to a member of his family.  McGinley v. Alliance Trust
Co., 168 Mo. 257; Udden v. O'Riley, 180 Mo. 650; De
Kalb Andrus v. Bradley Alderson Co., 117 Mo. App.
322; Herdt v. Koenig, 137 Mo. App. 588; Mascheck v.
Klute, 133 Mo. App. 280.

REYNOLDS, P. J.—The husband of plaintiff in
this case was the tenant of defendant, renting from
him the upper rooms of an apartment house, in which
rooms plaintiff and her husband resided.  The lower
rooms were rented to another family.  To the rear
of this apartment house was a yard, at the back of
which were sheds and outhouses.  A gate or opening
led to an alley.  This back yard and the outhouses were
used in common by the several tenants of the apart-
ment house.  There was no made walk through the
yard, the tenants throwing ashes and cinders from
the rear of the house to the back of the lot in muddy
weather.  There were two sewer or drain pipes be-
tween the house and the vaults, one some twelve inches
the other some five or six inches in diameter.  The
twelve-inch pipe projected some six or seven inches
above the ground and was covered with what is de-
scribed as a tin tub.  The flange or rim of the six-inch
pipe was broken off level with the surface of the
ground on one side; a portion of it appears to have
projected two or three inches above the surface.  A
loose flat rock was used as a cover for this six-inch
pipe.  The premises were in this condition when
rented.

There is a good deal of conflict in the testimony
as to the size and weight of this rock, but that point
is not material now.  It was in evidence that the rock
which was provided for this smaller pipe often became
displaced and the tenants and members of their fam-
ilies were in the habit of replacing it over this sewer
or drain pipe.  Plaintiff testified she had often done
that herself.

On the night of the 21st of October, 1907, plaintiff and a letter carrier, who was boarding with plaintiff and her husband, went out through this back yard and through the gate in the rear of the premises to go to a moving picture show on a street north of the premises. Returning from that and entering the premises through the rear gateway, plaintiff and her companion walking through the yard, plaintiff remembered that she had left some utensils out by the back fence. She turned back to get them to carry into the house. She had gone from six to eight feet away from her companion when he heard her scream. Going to her he found that she had fallen and that her right foot and limb had gone into this six-inch drain pipe and was so securely held that she could not withdraw the limb. Calling the tenants of the lower apartment to his assistance, they with considerable difficulty managed to extricate plaintiff's limb from the pipe, and her husband having joined them, they carried plaintiff into the house and up into her own apartment. She was confined to her bed for quite a length of time, and for a longer time to the house. While no bones were broken, she sustained a very severe sprain and was internally injured, the latter injury, as testified to by the attending physician, resulting in prolapse of the uterus, a permanent injury as testified by that physician. Plaintiff had paid the physician some twenty-five dollars for his attendance and had also paid a nurse or attendant $2.50 a week for some six or eight weeks that she was with her. Plaintiff's occupation had been that of seamstress and she earned about $1.50 a day. She testified that she had lost the effective use of her right limb, with which before then she had operated her sewing machine, and her earning capacity as a seamstress very greatly diminished. The physician testified that her injuries, both external and internal, in all probability were permanent. The plaintiff testified that the moon was shining, although not

very brightly, on the night and at the time of the accident; that she saw the stone lying in the yard but supposed that it was in its usual place over the opening of the drain pipe and was not aware that the drainpipe was open until she stepped into it.

At the conclusion of the testimony for plaintiff, and again at the conclusion of all the testimony, defendant interposed a demurrer, both of which were overruled. The jury returned a verdict in favor of plaintiff for $1750. Judgment following, defendant filed his motion for new trial as well as one in arrest of judgment. These being overruled and exception saved, defendant duly perfected appeal to this court.

The errors here assigned are to the improper admission of testimony and the refusal of the demurrers As to the latter, it is claimed that it clearly appeared that plaintiff's own want of care directly contributed to her injury and prevented a recovery on her part, and further, that it appeared that the property was in the same condition at the time of the letting to plaintiff's husband as it was at the time of her injury and that she knew it and therefore assumed the risk of using the property in that condition. It is also assigned for error that the court singled out the testimony of a witness and commented on it and had singled out a particular fact in the evidence, thereby giving undue prominence to that fact. It is further contended that the instruction given at the instance of plaintiff as to the measure of damages is erroneous and misleading. For these reasons it is urged that the motion for new trial should have been sustained.

Taking up these assignments in their order, we have to say as to the first one that it is untenable. It is founded on the claim that the physician who attended plaintiff should not have been permitted to testify that she had suffered the internal injury referred to. The averment in the petition as to the damages sustained is broad enough to have let in the testimony

of this internal injury. To follow the language of the petition covering this particular point, it is set out that as the direct result of her fall, plaintiff's right ankle was "dislocated, sprained and badly wrenched, and that her body and right lower limb was bruised, scarred and injured and her entire nervous system disordered, shocked and also greatly injured internally, and that her injuries are permanent and incurable; that as a result of said injuries she is now a cripple and will be a cripple for life, and that she was made sick and sore and was confined to her bed for a long space of time, unable to help herself; that she has suffered and will in the future suffer great bodily pain and mental anguish, . . . and that her health and strength and ability to perform any kind of labor has been greatly and permanently impaired and destroyed." Counsel apparently are of the opinion that these words, "and also greatly injured internally," refer to her nervous system. Evidently that is not what was meant by the pleader or what would be ordinarily understood. The whole clause is, "and her nervous system disordered, shocked and also greatly injured internally." It is evident that the pleader intended to aver that plaintiff was also greatly injured internally. This idea may not be expressed very accurately; it would have been helped if after the word "disordered," the word "and" had been inserted, and between the words "and" and "also," the words "she was," had been interlined. But we think the language used was clearly intended to refer to internal injuries, not to nervous shock, and was sufficient to admit the evidence of injury to her womb, and it is of this latter that complaint is made.

In support of the second assignment of error on the refusal of the demurrers to the evidence and of an instruction to find for defendant, it is argued that the property was in the same condition at the time of the letting to plaintiff's husband as it was at the time of

her injury and that plaintiff knew it and therefore assumed the risk of using the property in that condition, and hence she could not recover. That question of the property being in the same condition as when rented, was a question of fact for the jury. If defendant desired a specific instruction on it, he should have asked one—which he did not.

The cause of action pleaded is "that notwithstanding the character of the five-inch vertical pipe or shaft above as described in its manner of construction the defendant negligently and carelessly allowed said five-inch pipe or shaft to become out of repair and dangerous, in that the same was allowed to remain open and unprotected, and that the defendant well knew, or could have known the same by the exercise of ordinary care, in time to repair the same before the injuries to the plaintiff hereinafter complained of, and that the said five-inch vertical pipe or shaft aforesaid was in the condition above described at the time of the injuries hereinafter complained of, to-wit: on the 21st day of October, 1907."

We think the negligence charged was practically covered by instructions given. By one given at the instance of defendant, "The court instructs the jury that if from the evidence they believe that the pipe in question was kept covered by a stone and that said stone was a reasonably safe covering for said pipe to prevent persons from stepping into said pipe when using the yard in question for such purposes to which said yard was ordinarily put, then the jury will find for the defendant." It was further covered by an instruction given at the instance of plaintiff, and on which no error is assigned. By that instruction the court told the jury, among other things, that it was the duty of defendant to keep the yard in a reasonably safe condition for the purposes for which such yard was ordinarily used, so that the tenant and his family, while exercising ordinary care in its use, would suffer

no injury; that if they found there was a sewer pipe underground between the vaults and the main sewer; that "the defendant, on the date herein mentioned, had and maintained a certain vertical pipe or shaft extending from the underground connection aforesaid, up and through the ground to the surface thereof, and that said pipe was hollow and open at the end and protruded from the ground; and if you further find and believe from the evidence that the defendant negligently permitted said pipe or shaft to remain open and without a reasonably safe covering to prevent persons from stepping into said pipe when exercising ordinary care in the use of said yard for such purposes to which said yard was ordinarily used and that the plaintiff while in the exercise of ordinary care and while using said back yard for the purpose for which it was ordinarily intended, stepped into, or slipped into said pipe and injured herself, then the court instructs the jury that your finding will be for the plaintiff, provided you further find and believe from the evidence, that defendant knew, or by the exercise of ordinary care might have known the condition of the opening of said pipe."

With these instructions before them the jury were practically required to pass on the very question on which counsel here assumes there was no evidence. The jury could only have found for plaintiff if they found from the evidence that the pipe in question had not been covered and kept covered by this stone and that the stone was not a reasonably safe covering for the pipe.

It is further argued in effect, in support of that assignment, that plaintiff cannot recover if she directly contributed to her injury. That proposition is beyond question, and as will be seen by the instruction quoted, given by the court at the request of plaintiff and not here challenged, that matter was sub-

mitted clearly and distinctly to the jury. It was further covered by an instruction given by the court of its own motion, "that it was the duty of plaintiff in using the yard in question to exercise such care as an ordinarily prudent person using said yard would have used under the same circumstances under which plaintiff was using the same at the time described in the evidence, and if the jury find from the evidence that the plaintiff failed to use such care at the time she was injured, then the jury will find a verdict for the defendant." By other instructions given by the court of its own motion, the jury were correctly instructed as to the meaning of ordinary care and were further told that "the burden of proof is on the plaintiff to establish by a preponderance of the evidence the facts necessary for a verdict in (her) favor under these instructions, except upon the issue concerning the exercise of ordinary care by the plaintiff. As to that issue the burden of proof is on defendant to show the want of such ordinary care on the plaintiff's part." No error is assigned before us to the giving of any of these instructions. We think this error now assigned here is untenable.

The third assignment of error is to the second instruction given at the instance of plaintiff. That instruction, in substance, told the jury that if they found from the evidence that Edward Kuhn, at the time of the accident and prior thereto, was the agent of defendant for the purpose of looking after and •making any necessary repairs as might be reasonably required on the premises, then the court instructed the jury that if they found and believed from the evidence that Edward Kuhn had knowledge a reasonable length of time prior to the date of the accident that the opening of the pipe was not reasonably well protected to prevent a person who was using the yard for the purposes for which it was ordinarily intended and while in the exercise of ordinary care from stepping

into or slipping into the pipe, then the knowledge on the part of Edward Kuhn was notice to his principal, the defendant. It appeared that the defendant himself was a nonresident of this State and that this property was in the immediate care of his son Edward Kuhn, the witness here referred to. We do not think that this instruction was incorrect either as an undue comment on the evidence or in singling out a particular fact in the evidence and giving undue prominence to it as claimed by counsel for appellant.

The most serious and strenuous argument of the learned counsel for appellant, however, is directed to the instruction which the court gave as to the measure of damages. That instruction, numbered 3, so far as pertinent to this assignment of error is as follows:

"The court instructs the jury that if you find a verdict for the plaintiff you are, in estimating her damages, to consider any change in her physical condition which you may believe from the evidence resulted from the injury to her; the physical or mental anguish, if any, suffered by her on account of her injuries at the time of and since such injuries, as shown by the evidence, and such damages, if any, as you may from the evidence find it is reasonably certain she will suffer in the future therefrom; and you will find a verdict for such sum as, in your judgment, will under all the evidence reasonably compensate her for such injuries, including compensation for such sums of money, if any, as the evidence shows she herself has heretofore paid out for medicine, nursing and medical treatment, but not including any amount not already actually paid by her."

We have very carefully examined the cases cited by learned counsel for the appellant and which they claim condemn this instruction, but are unable to find that it violates any of the rules laid down in any one of those cases. Comparing this instruction with the instruction which was given in Curtis v. McNair, 173

Mo. 271, 73 S. W. 167, that instruction being there set out on page 290 and designated as instruction B, we are unable to perceive any substantial difference between this instruction here given and that in the Curtis case, which was distinctly approved by our Supreme Court. The difference between the two instructions is a mere verbal difference, in no way whatever changing the meaning or altering the rule as announced in Curtis v. McNair, supra.

Finding no error to the prejudice of defendant, materially affecting the merits of the case, the judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.