# ALICE ROY, Respondent, v. KANSAS CITY, Appellant.

## Kansas City Court of Appeals, June 26, 1920.

1. **MUNICIPAL CORPORATIONS: Actions: Notice.** Laws of 1913, p. 545, providing that "no action shall be maintained against any city . . . on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing . . . within ninety days of the occurrence" does not apply to an accident occurring outside the city limits, and in the latter case no notice need be served.

2. ————: **Liabilities for Negligent Acts Beyond City Limits.** A municipal corporation authorized by its charter to construct a viaduct beyond the city limits is liable for its negligent act in placing an obstruction in the highway without a light near by while in the course of the construction of such viaduct even though the injury occurs beyond the city limits.

3. ————: **Charter Powers: Ordinance in Exercise of Power: Presumptions.** Where the charter empowers a municipal corporation to construct a viaduct, and provides that such power shall be exercised by ordinance the duty is on the municipal corporation to show the lack of such ordinance where its employes have testified that they were working for the municipal corporation at time of placing the obstruction in the street, for the reason that there is a presumption of such legislation by the city as was necessary to justify the action of the employees.

4. **APPEAL AND ERROR: Constitutional Question: When Raised.** The raising of a constitutional question for the first time on motion for a new trial comes too late when the defendant at the time of the filing of plaintiff's amended petition during the trial had notice that the amended petition would involve the constitutional provision it intended to rely upon.

5. **CONSTITUTIONAL LAW: Municipal Corporation: Construction of Bridges.** Section 53, Article 4, of the State Constitution does not limit the power of the general assembly to authorize municipal corporations to erect a bridge only across a stream forming a boundary between this and any other State.

6. **PRESUMPTIONS: Laws of Kansas.** The State of Kansas having been carved out of territory that was never a part of the English possessions, there is no presumption that the common law has

ever been enforced in that State, and hence the presumption is that the law of Kansas, constitutional and constructive, is the same as that of Missouri.

7. PRACTICE: Amended Petition: Continuance. It is not error to refuse to grant a continuance upon the filing of an amended petition when there is no contention of surprise on the part of the defendant.

8. EVIDENCE: Plat: Harmless Error. Where the whole evidence in the case indicates that the accident occurred in the State of Kansas, the admission of a plat in evidence, objected to as hearsay, is harmless error.

9. MUNICIPAL CORPORATIONS: Negligence: Instructions. An instruction which requires a finding that defendant negligently placed a pile of lumber on a viaduct and negligently failed to place a light thereon or near by *held* proper.

10. NEGLIGENCE: Imputed: Instruction. An instruction that the negligence of the driver of the automobile in which plaintiff was riding at time of accident could not be imputed to plaintiff was proper.

11. ———: Parties Defendant: Motion to Require Joinder. It was not erroneous to refuse defendant's motion to require the joinder of the driver of the automobile in which plaintiff was riding as section 9801, Revised Statutes, 1909, gives the city the right to file a motion requiring joinder of another as a defendant only when that other is primarily liable and is in turn liable to the city.

12. DAMAGES: Permanent Injury: Excessive. Verdict for $5,000 *held* not excessive.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney*, Judge.

AFFIRMED.

*Hogsett & Boyle* for respondent.

*E. M. Harber* and *A. F. Smith* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5000 and defendant has appealed.

The facts show that at the time of the accident, which occurred on August 17, 1917, about 1:00 A. M. plaintiff

was riding as a passenger in a hired Ford automobile. The automobile was proceeding eastward on the 23rd Street viaduct in Kansas City, Kansas, when it collided with a pile of lumber left on the driveway of the viaduct by the defendant. The Kansas Avenue viaduct in Kansas City, Kansas, connects with the 23rd Street traffic way or viaduct and all of the latter is eventually to be in Kansas City, Missouri. The Kansas Avenue viaduct runs east and west, the eastern end being at the State Line. The purpose of Kansas City, Missouri, was to construct a permanent viaduct along 23rd Street to join with the Kansas Avenue viaduct, which had been completed, to make one entire traffic way, carrying the traffic between the two cities. At the time plaintiff was injured the Kansas City, Missouri, part of the permanent structure had not been started and the traffic from the Kansas Avenue viaduct was carried from its eastern end to the higher ground in Kansas City, Missouri, some distance to the east, by means of a temporary wooden approach, referred to in the evidence as the 23rd Street viaduct. The temporary structure did not join, end to end, with the permanent structure but entered it from the north side, a few feet west of the eastern end of the permanent structure. Across the eastern end of the permanent structure was a fence running diagonally in a southwesterly and northwesterly direction at an angle of 45 degrees. There was also a fence on each side of the temporary wooden structure. The fence on the south side of the temporary structure joined with the fence along the eastern end of the permanent structure. The junction of these fences created a corner. The pile of lumber against which the automobile ran was about four feet high, extended out from the south fence of the temporary wooden structure three or four feet and was situated about two feet east of this corner. The night was dark and foggy. There was no light of any kind on the pile of lumber nor anywhere on the viaduct that would cast any light upon the lumber. The pile of lumber had been placed by the defendant for the purpose of making repairs on

its part of the viaduct, or the temporary wooden struc-
ture. The place where the accident occurred was a few
feet across the State Line in the city of Kansas City,
Kansas.

At the time of the accident plaintiff with her broth-
ers and another companion was being taken home from
a social gathering in Kansas City, Kansas, in the auto-
mobile which was being driven by one Charles Burley.
The automobile at the time was proceeding at the rate
of eight or ten miles per hour. The automobile had come
across the Kansas Avenue viaduct and made the turn
into the 23rd Street viaduct around the corner, when it
suddenly and without warning ran into the west end
of the pile of lumber, upsetting the car and injuring
plaintiff in the manner hereinafter set out.

The first point urged by the defendant is that the
court should have given its instruction in the nature of
a demurrer to the evidence. There was no notice served
upon the city and defendant insists that this action con-
not be brought for the reason that notice as provided
under the statute (Laws of 1913, p. 545) was not given.
The statute provides,—

"No action shall be maintained against any city
. . . on account of any injuries growing out of any
defect in the condition of any bridge, boulevard, street,
sidewalk or thoroughfare *in said city,* until notice shall
first have been given in writing . . . within ninety
days of the occurrence."

The statute provides that the notice shall be re-
quired when the occurrence happens in the city affected.
The occurrence out of which this suit arose did not hap-
pen within the limits of defendant city but outside of
the same, and as the statute does not provide for notice
under such circumstances, we are not justified in reading
into the statute language that is not found therein in
order to bring the occurrence out of which this action
arose within the terms of the statute. This makes it un-
necessary for us to decide whether the pile of lumber

in controversy constituted "a defect in the condition" of the viaduct within the meaning of the statute.

It is claimed that if the accident happened outside of the city limits of Kansas City, Missouri, there was no duty upon the defendant in reference to the construction and maintenance of the place where the accident occurred as a public thoroughfare. Section 1, article 1, of defendant's charter gives the city authority to acquire "and hold and use lands or other property, either within or outside of the corporate limits of the city, for . . . viaducts, bridges," etc., and Clause 13, section 1, article 3, of said charter empowers the city "to establish, erect and keep in repair bridges, culverts, sewers, sewer outlets within or outside the limits of the city." The city constructed this viaduct under these provisions of its charter. It is insisted that these provisions of the charter do not impose upon the city a libility for its negligence, if any, in the construction or maintenance of a thoroughfare or viaduct in the State of Kansas. That part of the petition upon which the case was tried and submitted does not proceed upon the theory that it was the duty of the defendant to keep the viaduct and place of the accident in a state of repair but that defendant was guilty of positive acts of negligence of commission in leaving an unlighted pile of lumber upon a thoroughfare built and maintained by it for use by the public. That the city is liable for such negligence is beyond question. [City Council of Augusta v. Mackey, 113 Ga. 64, 69; City Council of Augusta v. Owens, 111 Ga. 464, 475, 476; Dooley v. The City of Kansas, 82 Mo. 444; Allison v. City of Richmond, 51 Mo. App. 133, 137.]

It will be seen that by reason of the provisions of the city charter quoted, supra, the city in erecting and repairing its viaduct was acting within the authority conferred upon it by law, and that its acts were not *ultra vires* even if a portion of such viaduct was without the limits of the city. It is, therefore, unnecessary for us to discuss the subject of the liability of municipalities for negligence in respect to their *ultra vires* acts. This

subject will be found treated in Jones on Negligence of Municipal Corporations, p. 341, et seq. The case of Stealey v. Kansas City, 179 Mo. 400, and other cases cited under this head by the defendant are not in point. In the Stealey case it was attempted to hold the city liable for its failure to keep in repair a sidewalk outside of the city limits. As before stated, in this case the acts complained of are not those of omission but commission.

It is insisted that if defendant's charter authorized the construction and repair of the viaduct, that such authority could be exercised only by an ordinance enacted by the proper authorities of the city and as there was no proof of the passage of such an ordinance, the acts of defendant's officers and employees in constructing the viaduct and placing the pile of lumber thereon, cannot bind the city. Section 1, article 3, of the charter provides that the power to establish, erect and keep in repair bridges, etc., within or outside of the limits of the city shall be exercised by ordinance. The record is silent as to whether there was or was not an ordinance. We think that the duty was upon defendant to show the lack of such an ordinance, for the reason that there is a presumption in favor of the existence of such legislation (if it was necessary) on the part of the city to justify the action of defendant's employees (Kobs v. City of Minneapolis, 22 Minn. 159; The Corporation of Bluffton v. Silver, 63 Ind. 262, 267; City of Elgin v. Goff, 38 Ill. App. 362; 6 McQuillin, Municipal Corporations, p. 5478; Frazier v. City of Rockport, 202 S. W. 266), who testified that at the time of the accident they were working for the city in the street repair department and under the immediate direction of the Superintendent of Street Repairs, whose duty it was, under defendant's charter, to repair viaducts such as this one. [Sec. 5, Art. 10, Charter of 1909.] These employees further testified that the lumber piled on the viaduct belonged to the city and was being used in repair work,

204 M. A.—22

in which they were engaged, upon the viaduct. The cases of Stewart v. City of Clinton, 79 Mo. 603, and Bennett v. City of Nevada, 213 S. W. 785, cited by the defendant, are not in point. In both of these cases it was affirmatively shown that there was no ordinance authorizing the acts of the city officials.

It is contended that the provisions of the charter purporting to confer upon the city the power to construct this viaduct outside of the limits of the City of Kansas, Missouri, are unconstitutional and void. The particular provisions of the Constitution of the State of Missouri it is claimed prohibit the enactment by the city of the charter provisions in question, are section 16, article 9, and section 53, article 4. The former section provides that the charter of cities such as defendant must be "consistent with and subject to the Constitution and laws of this State." The latter provision provides that the general assembly shall not pass any local or special law,

"relating to ferries or bridges, or incorporate ferry or bridge companies, except for the erection of bridges across streams which form boundaries between this and any other State."

It is claimed that by reason of these provisions of the State Constitution the city has no authority to enact a charter containing provisions authorizing the city to erect this bridge beyond the State Line, the point where the viaduct crosses the State Line not being a river. If there is anything in this contention, no city in the State of Missouri could build a bridge either beyond the State Line or wholly within the city limits unless that bridge crossed a stream which forms a boundary between this and some other State. If this constitutional provision is to be so construed, it will work a revolution in the matter of erecting bridges and viaducts within the limits of cities in this State. In this connection defendant also cites section 9688, Revised Statutes 1909, providing that,—

"All cities in this State having one hundred thousand inhabitants or over are hereby given the power and authority to build or acquire, . . . within their corporate limits or within a reasonable distance outside thereof, a bridge or bridges, . . . for public use . . . over . . . rivers and streams in Missouri or those forming a boundary between this and other States."

It is claimed that the Legislature by this expressed grant of authority has excluded the power of cities to construct viaducts and bridges other than those mentioned in the statute. The powers granted cities by this section of the statute are not exclusive. [See Haeussler v. St. Louis, 205 Mo. 656, 676, 677, 678, 679, 680.]

However, we think that defendant is in no position to raise this constitutional question at this time. The point was first raised in the motion for a new trial. The original petition alleged that the accident happened in Missouri. In the midst of the trial it developed that the accident did not happen in Missouri but in the State of Kansas. Plaintiff was then permitted to amend her petition by alleging that the accident happened without stating in what State, and stating that defendant maintained as a public highway and thoroughfare in Kansas City, Missouri, "and for a few feet across the State Line" the 23rd Street viaduct. Defendant then and there was notified that plaintiff could recover under the petition for an accident that happened in the State of Kansas, and on a viaduct that was constructed by defendant across the State Line. It was the duty of defendant if it intended to rely upon a constitutional question to have filed, then and there, an amended answer setting up the provisions of the Constitution that it relied upon, or, at least, it should have raised the point in its instructions. It is stated in Lohmeyer v. Cordage Co., 214 Mo. 685, 689, 690, that—

"It must be taken as settled law that in so grave a matter as a constitutional question it should be lodged in the case at the earliest moment that good pleading

and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. . . . If proper to put it in instructions, it should be lodged there."

It is contended that if there is a presumption that the law of Kansas is the same as the law of Missouri in ference to notices that must be served upon cities such as is provided by the Laws of 1913, p. 545, supra, that such a notice was necessary in this case. There is no pleading or proof as to what the Kansas law is. The State of Kansas having been carved out of territory that was never a part of the English possession, there is no presumption that the common law has ever been in force in that State. This being a fact, the presumption is that the law of Kansas, both constitutional and constructive, is the same as that of Missouri. [Lillard v. Lierly, 202 S. W. 1057; Lyons v. Railroad, 253 Mo. 143, 151.] There is no statute in this State providing for services of notices upon nonresident or foreign cities maintaining bridges or viaducts in the State of Missouri, therefore, for that reason if no other, we cannot presume that there was such a law in Kansas in reference to Missouri cities maintaining bridges and viaducts in Kansas.

It is insisted that as the accident happened in the State of Kansas, that under the laws of that State defendant is not liable for negligence in maintaining a bridge outside of its limits in the State of Kansas. Of course, we cannot presume that Kansas has any law governing the liability of Missouri cities maintaining viaducts in the State of Kansas. However, we might say that the cases of Topeka v. Cook, 72 Kansas, 595, and Horner v. City of Atchison, 93 Kansas, 557, cited by defendant, are cases entirely unilke the case at bar, but more like the case of Stealey v. Kansas City, supra.

As before stated, plaintiff's original petition charged that the accident happened in Missouri. At the close of her evidence she was permitted to amend her petition so as to permit proof of the happening of the accident

in Kansas, all of the evidence showing that the accident happened in Kansas and not in Missouri. Defendant requested a continuance on account of this amendment but the same was refused. This is assigned as error. When this matter came up in the trial court defendant's counsel admitted that he knew long before the trial started that the accident happened in Kansas and that plaintiff would have to amend her petition in order to make out a case. There is no contention that defendant was surprised in the sense that it did not have reasonable opportunity to have in court evidence to meet this issue, but it is contended that it should have been given an opportunity to investigate the law in reference to accidents of this kind happening in Kansas. If the laws of Kansas bearing upon the subject were any different than our own, which was, of course, unlikely, defendant would have had a right to plead such laws in its answer as a defense. However, defendant's admissions show that it knew long before the trial started that the accident happened in Kansas and knew that plaintiff would have to amend her petition. Could not the trial court, under the circumstances, say that defendant should have been prepared on the law of Kansas when such an amendment was requested by plaintiff? There was no request that the defendant be permitted to amend its answer and, of course, the trial court did not refuse any such amendment. We do not think that the trial court abused its discretion in refusing a continuance under the circumstances. "It is trite law that every intendment exists in favor of the trial court's action on an application for a continuance." [Peterson v. Met. St. Ry. Co., 211 Mo. 498, 516.]

It is contended that the verdict of the jury is against the weight of the evidence and against physical facts. This court cannot consider an assignment that the verdict is against the weight of the evidence. [Harmon v. Irwin, 219 S. W. 392; Cedarland v. Thompson, 200 Mo. App. 618; Eidson v. Met., 209 S. W. 575.] The contention that the way in which plaintiff claims the accident happened is against the physical facts is based upon the

weight of the evidence rather than upon physical laws. This contention is really founded on the argument that the accident likely would not have happened in the way it was claimed it did, rather than that it could not possibly have so happened. The credibility of witnesses was for the jury and, as before stated, the question as to the weight of the evidence is not for this court. There was evidence of a substantial nature to support the verdict.

It is contended that the court held the jury too long at one session. The jury retired to consider their verdict at 9:30 A. M. and returned a verdict at 1:30 P. M. It is contended that ordinarily juries are excused at noon by the circuit court of Jackson County at Kansas City and ordered back at 2:00 o'clock. There is no evidence as to this. There was no suggestion made to the court by the defendant at the time that the jury was being held too long. The first objection made to it was in the motion for a new trial. We are unable to see any merit in the contention that the jury was held too long.          *

It is contended that the court erred in permitting plaintiff to testify that she told the driver of the automobile, just before the accident, to drive slowly. The evidence shows that he drove at the rate of eight to ten miles an hour after she told him, as she testified, "don't drive your car very fast, it is very dark." The answer pleaded contributory negligence and defendant claims that the car was running at high speed. We think the evidence was competent.

It is insisted that the court erred in permitting plaintiff to introduce a plat showing the location of the State Line, as the plat was hearsay evidence. The plat indicated that the place of the accident was on the east of the State Line, or in the State of Missouri. The witness who identified the plat afterwards went to the scene of the accident and surveyed the State Line and was then again place on the witness stand by plaintiff and corrected the former evidence by showing that he had made a survey and that the accident happened on the west side of the State Line, or in the State of Kansas. The whole evidence

shows that the accident happened in the State of Kansas. We fail to find any harmful error in the admission of the plat.

Defendant complains that the court erred in permitting witness Perkins to testify in relation to a conversation had by him and other persons to the effect that there was no lantern at the place where the collision occurred. The witness testified as to what the conversation was but the court excluded it on motion of the defendant. The court allowed the witness to state that there was a discussion as to whether or not there was a light there to show that a light or the absence of a light was called to the witness's attention at the time, but refused to permit the witness to state what that conversation was. Prior to all this the same witness, without objection, stated that somebody had made a remark with reference to the absence of a light on the pile of lumber. Under the circumstances we think that the admission of the testimony was harmless error, if error at all. [Schmidt v. Supreme Council of Royal Arcanum, 207 S. W. 874; Moore v. McCutchen, 190 S. W. 350; Smith v. Woodmen of the World, 179 Mo. 119, 133.]

The Court did not refuse a free cross-examination of witness Burley. Defendant was contending that there was a conflict between the witness's deposition in which he said he saw no lights and his testimony at the trial were he said that he had seen a light that was brought up after the accident occured. Whether there was any contradiction in his testimony we need not say, for the reason that the court sustained the objection to the question only after it had been answered more than once, and the objection was sustained on the ground of repetition.

Dr. Kuhn, witness for defendant, was asked by the plaintiff on cross-examination if he got the impression that plaintiff was malingering when he examined her during the trial. The doctor answered "No," and then there was an objection on the part of counsel for

defendant. There was no motion to strike out. The objection was too late. The witness was then asked if plaintiff made any effort to exaggerate her injuries or condition "that you noticed." Objection was then made to the question, and the doctor answered, "she talked very candidly and plainly, I didn't notice that she tried to exaggerate anything. I asked her about the injury and she told me in full and I asked her about the wound and she answered very promptly." This occurrence is assigned as error. The doctor was not asked in the latter question whether in fact plaintiff was malingering but merely whether or not she made any effort to exaggerate her injury when he examined her. The doctor had already testified regarding the conversation he had had with the witness at the time of the examination and the statements made by him to her We fail to see how this evidence could be objectionable. The case of Henson v. Kansas City, 210 S. W. 113, cited by the defendant, was one where *plaintiff's* own physician was placed upon the stand and asked if he saw any evidence of plaintiff *"feigning these tears."* It was difficult to ascertain whether the question had reference to plaintiff's attitude upon the witness stand, or while being treated by the doctor, or her attitude while sitting in the court room. Clearly that case is not in point.

It is next insisted that the trial court erred in giving plaintiff's instruction No. 1 which is as follows:

"If you believe and find from the evidence that on or about August 17, 1917, between the hours of one and two o'clock in the morning, and when it was quite dark and foggy (if you so find) plaintiff was riding in an automobile eastbound across what is commonly known as the Kansas Avenue bridge crossing the Kaw River from Kansas City, Kansas, to Kansas City, Missouri, and that just after said automobile had crossed said bridge and had passed on to a temporary wooden structure forming the eastern approach to said bridge and commonly known as the 23rd Street viaduct

and when said automobile was a few feet northeast of the point where said temporary wooden structure joins on to the permanent structure composing said Kansas Avenue bridge, and on the right hand side of said 23rd Street viaduct and within a few feet of the right hand railing of said viaduct (if you so find) said automobile collided with a certain pile of lumber upon said viaduct at said point (if you so find), and that as a direct result of said collision, if any, plaintiff was injured, and if you further find that said 23rd Street viaduct was built and maintained by said defendant at the times herein mentioned as a public thoroughfare, and as an approach to said Kansas Avenue bridge across the Kaw River, and that at the times herein mentioned and for a long time prior thereto said viaduct was much used by all kinds of foot and vehicle traffic at all hours of the day and night, if you so find, and if you find that all said facts, if you find them to be facts, were known to the defendant or by the exercise of ordinary care upon its part could have been known to it long prior to the 17th of August, 1917, and if you further find that said defendant carelessly and negligently, if you so find, piled the aforesaid lumber on said viaduct at said place and that said lumber, if any, constituted a dangerous and unsafe obstruction on said structure, if you so find, and if you further find that said defendant carelessly and negligently, if you so find, failed to place a light on said pile of lumber, if any, when it knew or by the exercise of ordinary care could have known, that in the absence of light on said pile of lumber members of the public using said structure would be liable to collide with said pile of lumber and be hurt and injured thereby, if you so find, and if you further find that the collision of said automobile with said pile of lumber, if you so find said automobile did so collide, and the injury, if any, to plaintiff was directly caused by the carelessness and negligence of defendant in the foregoing respects, if you find said defendant was careless and negligent

in said respects, and that plaintiff was at all times in the exercise of ordinary care for her own safety, then under the law your verdict must be for the plaintiff and against the defendant, and this is true even though you find said collision, if any, occurred on the Kansas side of the State Line, and you will assess plaintiff's damages at such sum as you find from the evidence will reasonably compensate her for her said injuries, if any, received as a direct result of said collision, if any.''

It is first contended that the instruction permitted a recovery if the accident happened in Missouri and that there was no proof of any notice severed on the city as required by the statute, supra. As before stated, the evidence all shows that the accident happened in Kansas. While the jury were told in the instruction that under the hypothecated facts it could find for plaintiff even if the accident happened on the Kansas side of the State Line, we do not think that under the circumstances the jury could have been led into the idea that there was any claim that the accident happened in Missouri in view of the state of the record in this case. Under the circumstances the jury would get no other impression from the words used in the instruction than that the court meant that the fact that the accident occurred on the Kansas side would not prevent plaintiff from recovering. The instruction is not subject to the criticism that it was too long and complicated. It does not assume as a fact that the accident happened on the temporary wooden structure. [Costello v. Kansas City, 219 S. W. 386, 390; Sparks v. Harvey, 214 S. W. 249; Warnke v. Rope Co., 186 Mo. App. 30.]

It is insisted that if defendant was required to keep the viaduct in a state of repair that it had a lawful right to use reasonable means to accomplish such repairs by placing the pile of lumber on the viaduct in the position in which it was, and the instruction is erroneous in submitting to the jury the question of

defendant's negligence in placing the lumber on the viaduct as such placing by defendant was not a negligent act. The instruction requires only that the jury find that the lumber was carelessly and negligently placed there but that defendant carelessly and negligently failed to light the same. In order to sustain this contention of the defendant it would be necessary for us to say as a matter of law that the defendant was not guilty of any negligence in leaving the unlighted pile of lumber in the condition in which it was. This, of course, we cannot do.

It is insisted that the city was only required to keep the viaduct in a reasonably safe condition for travelers who would use it in the exercise of ordinary care. The jury were instructed that they must find that such obstruction constituted a dangerous and unsafe obstruction to all kinds of foot and vehicular traffic. If the jury found such to be the fact, they found that the viaduct was not reasonably safe. [Hebenheimer v. City of St. Louis, 189 S. W. 1180; Squiers v. Kansas City, 100 Mo. App. 628, 631.] It is next insisted that the instruction was erroneous on account of the use of the word "liable." It is insisted that the word "liable" means "within the range of possibility," and that by reason of the use of such a word the instruction told the jury that the city was required to guard against all possible contingencies and that it made the city practically and insurer of all persons using the viaduct. We think there is nothing in this contention. The jury were required to find that the lumber was piled on the viaduct in such a position as to constitute a dangerous and unsafe obstruction to "all kinds of foot and vehicle traffic at all times of the day or night," and, further, that the defendant carelessly and negligently failed to place a light on said pile of lumber. If the jury found these facts to be true, then the city was guilty of negligence as a matter of law and it was not necessary for the instruction to add that the city could be held account-

able if it had reason to believe that persons were "liable" to collide with such pile of lumber. The word "liable" in the instruction in the case at bar is used in an entirely different connection than it was in the case of Root v. Kansas City Southern Ry. Co., 195 Mo. 348, 378, and in Sutter v. Kansas City, 138 Mo. App. 105, 112, 113. The word as it was used in those cases went to the very foundation of defendant's negligence and was used in such a connection as to make the defendant in each of those cases liable for the mere possibility of the happening of the event upon which the claimed negligence of defendant was based.

The instruction in the case at bar did not abandon the theory of the case as made in plaintiff's petition. While the viaduct was not a thoroughfare in the sense that it was technically a street of Kansas City, Missouri, the defendant was liable for obstructing it for the reason that it was a public highway in the sense that the public constantly used it and was licensed to use it. [Denny v. Bridge & Iron Co., 150 Mo. App. 72; see also Phillips v. Library Co., 55 N. J. L. 307, 316.]

It is claimed that the instruction in the latter part thereof, which submits plaintiff's measure of damages, was erroneous for the reason that it permitted the jury to consider the injury to the nerve that passes "over the brow and extends to the back of the head" and which was near the cut that she recieved. It is insisted that the petition is not broad enough to cover such an injury; that as defendant objected to the testimony, though unsuccessfully, the instruction is erroneous for the reason that it permits the jury to consider such evidence when such an injury is not alleged in the petition. The petition alleges that plaintiff "was bruised, contused, lacerated, and injured all over her face, head, body and limbs." This allegation was broad enough to permit recovery for injury to the nerve in question. [Van De Vere v. City, 196 S. W. 785; Price v. Met., 220 Mo. 435, 464, 465; Dean v. Wabash, 229 Mo. 425, 448, 449; Haywood v. Kuhn,

168 Mo. App. 56, 63.; Bridges v. Dunham, 183 S. W. 703.] The court erred in giving defendant's instruction No. 1 withdrawing the injury to this nerve from the jury's consideration, but this error was invited by the defendant and it cannot complain.

There was no error in giving plaintiff's second instruction. The instruction told the jury that the negligence of the driver of the automobile, if any, could not be imputed to plaintiff. Such an instruction is approved in Sluder v. Transit Co., 189 Mo. 107.

The court did not err in overruling the motion of the defendant to require a joinder of the driver, Burley, as party defendant. By virtue of section 9801, Revised Statutes 1909, the city is given the right when the cause of action on account of which it is sued shall arise from the negligence of another when such negligence makes the other "liable to an action by the plaintiff on the same account as such city is sued for," to file a motion requiring that such other party be made party defendant with it. The court was right in refusing to sustain the city's motion to make Burley a defendant in this case, for the reason that the purpose of the statute is—"to prevent circuity of action, and a multiplicity of suits, and their attendant evils, in those cases where the city can be held liable for the wrongful or negligent acts of others who are *primarily liable and who would in turn be liable over to the City?"* [Wiggin v. St. Louis, 135 Mo. 558, 568; see also Hutchinson v. Mullins, 189 Mo. App. 438, 446, 447.]

It is insisted that the verdict is excessive. The automobile in which plaintiff was a passenger turned over when it struck the pile, of lumber and injured plaintiff to such an extent that she became unconscious for a time but regained consciousness sufficiently to recognize the situation. On the following day she was in a semi-conscious state. Her face was swollen and bruised and her eyes were swollen shut for about three weeks after the accident. Her face was per-

manently disfigured. She had a long gash over her forehead from the beginning of the hair down to her eyebrow, which has left a permanent disfiguring scar, which will improve some but will not go away entirely. The doctor testified that this scar was a very jagged, ugly and bad looking wound that would always show. Her right eye was bruised and has bothered her some since the accident; she has been unable to do any sewing; when she attempts to sew her eyes pain her and when she attempts to read they water so that she is unable to see. She had a diagonal cut on the right cheek bone which left a scar that was visible at the time of the trial on November 19, 1918. She also had a cut on her upper lip which left a scar that could be seen at the time of the trial. She had a cut entirely across the inside of her lower lip which was sensitive and tender at the time of the trial and bothered her in eating. By reason of this cut she was unable to eat any solid food for a period of two months after the accident. She had a cut and bruise on the bridge of her nose which was not healed up at the time of the trial. It became inflamed and left a lump and scar on her nose. The doctors testified that in their opinion she had a fracture of the skull at the side of the large gash on her forehead. She has had headaches all the time but sometimes they are not as bad as at others. She has trouble with her menstrual periods, they being about twice as long as formerly and accompanied with pain, backache and cramps. She is not able to work for a period of ten or twelve days at these periods. She was in bed constantly for three weeks after the accident and then up and down for a month or five weeks. At the time of the trial she had lost sixteen pounds in weight since the accident. Under the evidence the jury could well find that plaintiff suffered a severe and permanent injury as well as a disfigurement of her features. Under the circumstances the verdict for $5,000 is not excessive, especially in view of the lessened purchasing power of money. [Smith v. K. C.

So. Ry. Co., 213 S. W. 481, 486; Duffy v. K. C. Rys. Co., 217 S. W. 883; Hurst v. Chi.; B. & Q. R. Co., 219 S. W. 566.]

The judgment is affirmed. All concur.