Tyrone JACKSON, by and through his Mother and Next Friend, Adella Jackson, Respondent,

v.

The CITY OF ST. LOUIS, a Municipal Corporation, Appellant.

No. 52059.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1967.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 11, 1967.

Thomas C. Hullverson, Hullverson, Richardson & Hullverson, St. Louis, for respondent.

Thomas F. McGuire, City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for appellant.

PER CURIAM:

This is an action for personal injuries sustained by Tyrone Jackson, a minor, when he struck his eye on a post standing in an alley adjacent to a public park of the defendant, City of St. Louis. The jury's verdict was for plaintiff for $21,500.00. The city appealed following the overruling of its motion for new trial.

Catalpa Park is a small public park, owned and maintained by the City of St. Louis. The park is bounded on the north by a public alley, running parallel to what was, at the time of the incident here, the Hodiamont Avenue car line. The facilities at Catalpa Park included a baseball diamond. We find no evidence of distances involved, but the outfield of the baseball diamond in the left and center field area was bounded, at least in part, by the alley mentioned above. In 1963 a number of steel posts were erected by the city along the north boundary of the park. Some, judging from the photographic evidence, supported a fence which had been partially removed. Others, according to witnesses, bore "No Parking" signs and were intended to keep automobiles from encroaching upon the park area.

In the afternoon of July 17, 1964, Tyrone Jackson was at the park with two friends. One, Michael Roberts, was knocking fly balls to Jackson who was between second and third bases, some ten feet behind the base line. Roberts knocked a ball toward Jackson. Jackson at first thought the ball would fall in front of him and started to come in toward the batter. Then he realized that the ball would go over his head and he started to run or "trot" back, watching the ball. He leaped up, turning to his left, to catch the ball. The sun hit him in the eyes and he turned his head and struck his left eye on the top of a steel post, sustaining injuries which eventually required removal of the eye.

The post which Jackson struck was a steel post, painted green, some five feet high and two or three inches wide. It was some three feet south of the travelled portion of the alley, but a survey made by the city located the pole three feet inside the alley and, therefore, outside the park boundary. Grass was growing on all sides of the pole and the photographic evidence showed no demarcation of the actual line between the alley and the park.

Jackson and his two companions testified that, although they had been at the park on numerous prior occasions, they had never noticed the particular post. Jackson described the location of the post as in "left center field." He had played first base on previous occasions in the park. Another witness for plaintiff testified that he had noticed the post in the spring of 1963. At that time, it bore no sign. The

city's evidence was that some posts had been erected for carrying "No Parking" signs, but the witnesses did not know whether the particular post had been so used. No sign appeared on the post and the fence did not extend to it.

■ On this appeal, the city first contends that its motion for directed verdict should have been sustained because plaintiff's evidence of a post standing in an alley adjacent to a park was not sufficient to support a submissible case of negligence for failure to exercise ordinary care to provide or maintain a reasonably safe place for patrons of a public park. The city acknowledges that it was under an obligation to exercise ordinary care to maintain its parks in a reasonably safe condition for use by the public. Volz v. City of St. Louis, 326 Mo. 362, 32 S.W.2d 72; Bagby v. Kansas City, 338 Mo. 771, 92 S.W.2d 142; Bronson v. Kansas City, Mo.App., 323 S.W.2d 526. However, relying upon Taylor v. Kansas City, Mo.Sup., 361 S.W.2d 797, the city contends that its duty does not require it to "guard against possible injuries to a child running backwards into an object in or close to a public park." Both Taylor and this case involved injuries sustained by a minor in a city park while going backwards in pursuit of a fly ball. Otherwise, the cases are far different. In Taylor, the plaintiff, playing in a school ground, crossed a curb marking the school ground boundary, into the adjacent park, continued backward, at least 19 feet inside the park, where he bumped against the 7-inch paved wall of a 60' x 80' swimming pool, into which he fell, sustaining injury. "The pool and the portion of the top wall extending above the level of the paved area surrounding it are made of white cement, which causes the pool to be readily distinguishable from the darker pavement surrounding it; no one looking forward as he approached it could avoid seeing it." 361 S.W.2d l. c. 798. The plaintiff was familiar with the pool. As the court observed, "He knew, as he thus walked backward, that he might trip over or run into something."

The crux of the city's nonliability in Taylor was the open and obvious condition which produced the injury, not the fact that the injury was sustained while the plaintiff was walking or running backward. Taylor did not establish the rule that a city is not liable in any event for injuries sustained by a patron of a public park who falls while walking or running backward in the park. The duty of the city in such circumstances is unchanged. Here, the jury could certainly find that a slender green steel post surrounded by green grass was not an open and obvious condition and that the city did not exercise reasonable care in permitting such a post to stand within an area owned by the city and used as part of a baseball ground. The evidence here did not show that the outfield limits of the baseball playing area had in any manner been bounded. Plaintiff's testimony would support the conclusion that the post was within an area in which players could reasonably be expected to pursue balls. Whether or not the city had met its obligations in these circumstances was a question for the jury.

The second point raised by the city is that the court erred in giving Instruction No. 2 because it was not supported by the evidence, was not pleaded by plaintiff and did not require the jury to find an essential issue, viz., "whether the park was in a reasonably safe condition for those using it."

■ In our judgment Instruction No. 2 is supported both by the pleadings and the evidence, and its language required the jury to find the essence of the allegedly missing element.

Plaintiff's second amended petition alleged:

"(4) That on or about July 17, 1964, while playing baseball at the aforementioned Catalpa Park and using the baseball diamond located therein as an invitee thereon plaintiff came in contact with the iron post located there on Catalpa Park property

proper or on ground immediately adjacent thereto as a direct result of defendant's negligence in the following respects, to-wit:

"A. Defendant knew or could have known by the exercise of ordinary care that said post at said location was a hazard, and that persons particularly children using said baseball diamond were likely to come into contact therewith and be injured and defendant negligently and carelessly permitted said post to be and remain in said location under the circumstances aforesaid and defendant negligently and carelessly under conditions and circumstances aforesaid failed to remove said iron post.

\* \* \*

"C. By reasons aforesaid, defendant negligently and carelessly failed and omitted to furnish plaintiff with a reasonably safe place in which to recreate and use while an invitee at Catalpa Park."

Instruction No. 2 was as follows:

"Your verdict must be for plaintiff if you believe:

"First, there was a metal post without anything attached to it close to a public park, and

"Second, such post was so close to the public park that children playing in the park in the exercise of ordinary care were exposed to a danger of running against the post and being injured, and

"Third, defendant, by using ordinary care, should have known of the existence of this condition and such danger, and

"Fourth, the defendant failed to use ordinary care to remedy it, and

"Fifth, as a direct result of such failure plaintiff was injured, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4."

Each of the five paragraphs of required findings in Instruction No. 2 finds support in the evidence. From the evidence the jury reasonably could find that there was a metal post with nothing attached to it so close to a public park that children playing in the park in the exercise of ordinary care were exposed to the danger of injury from running into the post; that the condition and attendant danger was one of which the city, in charge of and maintaining both park and alley, should have been aware and could have foreseen; that the city failed to exercise ordinary care to remedy the condition and eliminate the danger, and that as a result of the failure of the city to do so plaintiff was injured.

Instruction No. 2 is not erroneous and did not result in prejudice to the city by its failure to contain the words "and that the park was not in a reasonably safe condition for those using it," as claimed by the city. In support of its claim the city cites three cases: State ex rel. City of Jefferson v. Shain, 344 Mo. 57, 124 S.W.2d 1194; Guy v. Kansas City, Mo.Sup., 257 S.W.2d 665 and Sutton v. Fox Missouri Theatre Co., Mo.Sup., 356 S.W.2d 41, for the proposition that "an instruction which leaves out the essential element of whether the public area was in a reasonably safe condition, is prejudicially erroneous."

In City of Jefferson the instruction authorized a finding based upon a mere defect, "whether dangerous or not." This case held that an instruction which required the jury only to find that the sidewalk was defective was a positive misdirection. In the Kansas City case the instruction authorized a verdict on the basis of a finding of a crumbled, worn and broken place in a curbing, without requiring a finding that this condition was dangerous or not reasonably safe. This instruction was held erroneous. In the Fox case plaintiff fell over a navy recruiting sign on the sidewalk in front of a theatre. The theatre and the city were sued. The city gave an instruction, held by this court to be erroneous, which directed a verdict for the city upon a finding that the sign did not unreasonably obstruct pedestrian traffic at the time and place. That was not the issue. The issue was whether

under the circumstances the city exercised ordinary care to keep the street in a reasonably safe condition for such travel; whether the sign would endanger public travel. These cases, and many others, point up the necessity of submitting something more than the defective condition. The instruction must further require a finding that the defect rendered the public facility dangerous and not reasonably safe to use. In City of Jefferson the opinion indicated that "the defect must be one to cause a condition not reasonably safe or one dangerous to travelers." 124 S.W.2d, l. c. 1196 [1]. In the Kansas City case it was said that "The breach of duty and hence negligence consists not alone in the defective street or curbing, but in the permitting and maintenance of a defective public way which is not reasonably safe but dangerous by reason of the defect. The defect complained of must be one calculated to cause injury and for that reason dangerous and unsafe for normal use. * * * The determinative factor the jury is to find, in addition to the physical facts complained of, for example the broken curbing, is that those facts constituted an unsafe, insecure and dangerous condition; that the described condition was not reasonable safe." 257 S.W.2d, l. c. 667. In the Fox case it was written that the issue "was not whether the sign merely *unreasonably obstructed pedestrian traffic*; it was whether, under the circumstances shown in evidence, *the City exercised ordinary care to keep the street in a reasonably safe condition for such travel.*" 356 S.W.2d, l. c. 50 [6].

These cases do not, however, prescribe any particular form of language that is required in order to submit this concept. "This is not to say that any particular language must be used, there have been variations in terminology, but invariably the finding has been required in some language." Guy v. Kansas City, supra, 257 S.W.2d, l. c. 668. It was therefore not necessary for Instruction No. 2 to submit a finding that the park was "not in a reasonably safe condition" in that exact language or

in those terms. The submission of the legal equivalent of the "not reasonably safe" terminology was sufficient. That is what was done in paragraphs Second and Third by the use of language submitting that the post was so close to the park that children playing in the park were exposed to the danger of running against the post and being injured. A condition which exposes the public to a certain specified danger is a condition that is not reasonably safe. Although often done, it is not necessary to say the same thing twice—it is not necessary to submit that the condition was dangerous *and* that it was not reasonably safe. Either is sufficient. The two terms are synonymous. The antonym of "dangerous" · is "safe." A recognized definition of "safe" is "untouched by danger"; "not exposing to danger." Webster's New International Dictionary, Second Edition. In Franklin v. Kansas City, Mo.App., 260 S.W. 502, it was contended that an instruction omitted an essential element in not submitting the issue whether a street was reasonably safe for travel in the ordinary modes. The instruction submitted whether there was a hole in the street which was "large, deep, and dangerous," and that it was a "dangerous condition." This was held sufficient, the court stating that "If the hole was large, deep, and dangerous, it would seem that necessarily the street was not reasonably safe." 260 S.W., l. c. 505. In Hebenheimer v. City of St. Louis, 269 Mo. 92, 189 S.W. 1180, a finding that a sidewalk was in "an unsafe, insecure and dangerous condition" was held "equivalent to a finding that it was not reasonably safe." In Roy v. Kansas City, 204 Mo.App. 332, 224 S.W. 132, the court ruled that if the jury found that an obstruction on a viaduct constituted a dangerous and unsafe obstruction to traffic, they found that the viaduct was "not reasonably safe."

The city urges that Instruction No. 2 is a submission of the "hard-by" rule; that this rule is not appropriate in the circumstances of this case, and that it is error to extend the hard-by rule to cover such cases

as this. The city quotes the definition of the hard-by rule from Restatement of Torts and argues its inapplicability for these reasons: the accident did not happen "close to" a public highway, but within a public thoroughfare; a public park does not qualify as a public thoroughfare; a post is not a "dangerous artificial condition," and the hard-by doctrine is limited to such conditions.

Plaintiff is not to be cast on the basis of labels and pigeonholes. We do not intend to extend or affect the hard-by rule by approving the use of Instruction No. 2 under these very unusual circumstances. We are simply ruling that this instruction, under these facts, properly and sufficiently submitted the city's duty, breach of duty, and consequent injury and damage.

Judgment affirmed.