WADE LAHAR CONST. CO. *v.* McMINN-ECHOLS CO.

5-2569                                        356 S. W. 2d 1

Opinion delivered April 9, 1962.

*Mehaffy, Smith & Williams,* by *Herschel H. Friday* and *William H. Sutton,* for appellant.

*House, Holmes, Butler & Jewell,* for appellee.

CARLETON HARRIS, Chief Justice. In December, 1958, Wade Lahar Construction Company, principal appellant herein, entered into a contract with the city of Little Rock for the construction of a portion of the Little Rock sanitary sewer system. On April 22, 1959, Lahar subcontracted a part of the work with McMinn-Echols Company, principal appellee herein, the latter to build the concrete manholes, and creek crossings, at designated points along the sewer line. The dispute which occasions this litigation arose over the interpretation of Section 4 of the subcontract, which provides as follows:

"The contractor agrees to pay to the subcontractor for the performance of his work the sum of $92,881.00 in current funds, subject to additions and deductions for changes as may be agreed upon, and to make payments on account thereof in accordance with Section 5 hereof,

The agreed price is a lump sum price based on using the following items to add to or deduct from agreed total.

1. If more or less than 1,455 cubic yards of reinforced steel concrete are used, add or deduct $62.72 per yard.

2. If more or less than 107 cubic yards of fill concrete are used, add or deduct $20.00 per cubic yard.

All quantities of concrete are to be measured from neat lines as per plans and specifications furnished by the consulting engineer.''

Appellee McMinn-Echols contends that it had a lump sum contract for $92,881.00, and was to receive that amount as long as the plans and specifications, which had been prepared, were followed, irrespective of the number of cubic yards used; that items ''1'', and ''2'' had reference only to additions to the work originally covered under the lump sum figure, and the final paragraph applied only if there were a change in plans and specifications. Lahar contends that in order to determine the amount earned under the contract, it is necessary to begin with the ''lump sum'' figure and, depending upon the amount of concrete actually used, add to or deduct from the agreed total. In other words, the contract was a ''lump sum'' contract for an agreed amount of work, with unit prices for adjustments, upward or downward, for variations of quantities. According to appellants' evidence, the set price was placed in the bid for the purpose of establishing bonding ability. It is asserted that the court's error in interpreting the section was principally due to the failure to give any consideration to the last sentence in Section 4, i.e., quantities of concrete were to be measured from neat[1] lines.

It is admitted that $76,337.50 has been paid by Lahar to appellee for work done under the subcontract. In May, 1960, appellee construction company instituted suit

[1] "Neat line"—(1) The line to which the face of a masonry wall is supposed to conform disregarding minor irregularities.

against this appellant and Standard Accident Insurance Company, which had executed performance bond for appellant, alleging that it has earned $103,559.57[2] under the subcontract, said figure being reached on the basis of $95,097.20 for 1,516.25 cubic yards of reinforced concrete used at the rate of $62.72 per cubic yard, $2,270 for 113.5 cubic yards of fill concrete at the rate of $20 per cubic yard, $4,526.70 for additions and extras, and $1,665.67 for further extras and additions. The complaint recited that $76,337.50 had been paid, and that an unpaid balance was due in the amount of $26,707.47. Appellants answered, and contended that McMinn-Echols had earned only $81,306.91, taking the position that only 1,274.61 cubic yards of reinforced concrete, and 94 cubic yards of fill concrete had been used as specified by the subcontract. This left the amount due this appellee as $4,969.44,[3] but appellants filed a counterclaim and third party complaint against McMinn-Echols, and its surety, National Surety Corporation, alleging that the former had not performed its work in accordance with the subcontract, and that Lahar had been compelled to furnish and perform items which properly were due to be furnished by McMinn-Echols; that this work amounted to $12,865.75, and that appellant construction company was due judgment of $7,896.31 over and above the total amount due McMinn-Echols. On trial, the court, sitting as a jury, held:

"1. That plaintiff, McMinn-Echols Co., Inc., is entitled to compensation from the defendants, Wade Lahar Construction Company and its surety, Standard Accident Insurance Company, for the performance of work under the sub-contract involved in this proceeding, the following sums (before taking into account amounts heretofore paid to plaintiff as set forth below); (a) $91,881.00 as the contracted lump sum amount agreed upon covering the placement of 1,455 cubic yards of reinforced con-

[2] By subsequent amendment to the complaint, this amount was changed to $103,044.97.

[3] This figure, as well as the $81,506.91, was reached by amendment, the answer originally stating that appellee was due to the sum of $8,496.31, and that appellee had earned $84,833.81. .

crete and 107 cubic yards of fill concrete under the subcontract, and (b) $3,998.40, for the placement of 63 and 3/4ths additional cubic yards of reinforced concrete, at the rate of $62.72 per cubic yard, and (c) $130.00 for the placement of 6 1/2 cubic yards of additional fill concrete, at the rate of $20.00 per cubic yard; making a total of $97,009.40, of which plaintiff has heretofore been paid $76,337.50 by Wade Lahar Construction Company, leaving a balance due plaintiff in the amount of $20,671.90.

2. That plaintiff is not entitled to recover on its claims for additions and extras in the amounts of $4,526.70 and $1,665.67.''

The court also found that Lahar was not entitled to recover on its counterclaim and third party complaint, and further held that none of the parties were entitled to recover statutory penalties or attorneys' fees from any other party or parties. From the judgment so entered, appellants have appealed. McMinn-Echols has cross-appealed from that portion of the judgment denying recovery on the claims for additions and extras in the amounts of $4,526.70 and $1,665.67, and also that portion denying penalty or attorneys' fees.

We do not reach all of the issues raised by the pleadings and the proof, for we are definitely of the opinion that the court erred in its construction of the contract. The court gave no consideration to the last sentence of Section 4, heretofore quoted, but apparently took the view advocated by appellees to the effect that this provision only applied if there were a change in plans and specifications (which did not occur). We think this view was erroneous, and find nothing in the instrument to support such a position. The provision under discussion is, we think, entirely clear, and free from ambiguity. We are of the opinion, that in giving effect to all the provisions of the contract, it is apparent that the $92,881.00 figure was not intended as a lump sum payment to be received by appellee McMinn-Echols, irrespective of the number of cubic yards used; in fact,

if appellees' contention is correct, we see no need for the estimates contained in subsections 1 and 2, for there would be no necessity for measuring yardage under a lump sum contract. Again, under appellees' view, we see no reason for the language which follows the figure $92,881.00, "subject to additions and deductions for changes." In *Bailey* v. *Whorton*, 207 Ark. 849, 183 S. W. 2d 52, we said, "In construing a contract, every sentence, clause, and word therein should, when it can be reasonably done, be given effect." When this is done, it definitely appears that the interpretation urged by appellants must prevail. We think logic supports this position, for, as pointed out by appellants, if any method of measurement is used other than from neat lines, a subcontractor could "over order, build his forms too large, let the forms bulge, waste or dispose of the concrete in any number of ways, and his inefficiency, incompetence, or what have you, will inure to his benefit in proportion to his mistakes at a cost to appellant of $62.72 per yard."

The court found that a total of 1,518.75 cubic yards of reinforced concrete had been used, and 113.5 cubic yards of fill concrete had been used. The 63.75 additional cubic yards of reinforced concrete, and the 6.5 cubic yards of additional fill concrete were arrived at through testimony on behalf of appellees that this amount had been poured, and upon delivery tickets showing the amount delivered to the job. This method of calculation, under the contract, was erroneous, for, as pointed out, that instrument provides that quantities of concrete are to be measured from neat lines as per plans and specifications furnished by the consulting engineer. Appellants offered evidence, arrived at by the latter method, to the effect that 1,274.61 cubic yards of reinforced steel concrete, and 94 cubic yards of fill concrete, were used on this job. Appellees did not offer any proof under this method of computation.

Because of the error herein set out, the judgment is reversed. Inasmuch as the court's findings were predicated upon an erroneous construction of the contract,

and because the court's findings relative to the counterclaim and third party complaint of appellants, and matters raised on cross appeal by appellee none of which we pass on in the instant litigation, were in the nature of a general verdict, the cause is remanded for the trial court's further consideration of all factual questions.

It is so ordered.

McFADDIN, J., concurs in part and dissents in part.

ED. F. McFADDIN, Associate Justice, concurring and dissenting. I concur with the Majority in reversing the judgment of the Pulaski Circuit Court and in remanding the case for a new trial; but I dissent from the process of reasoning contained in the Majority Opinion; and I now give the reasons for my dissent.

The Majority Opinion quotes in full Section 4 of the sub-contract and says: "The provision under discussion is, we think, entirely clear and free from ambiguity." I think Section 4 of the sub-contract is extremely ambiguous and almost conflicting. The opening portion of the section says that the contractor is to pay to the sub-contractor for performance of the work "the sum of $92,881.00." The section says, "The agreed price is a lump sum price. . ." Then the paragraph further says that the quantities used are to be measured from "neat lines as per plans and specifications." If the contract is a "lump sum price," then McMinn-Echols was entitled to $92,881.00 at all events for completing the contract. On the other hand, if the contract was not a lump sum contract, then the figure of $92,881.00 is meaningless. So it seems to me that there is an ambiguity in Section 4 of the contract.

Since there is an ambiguity, parol evidence was admissible to explain the ambiguity; and I think the parol evidence established (a) that McMinn-Echols was to get $92,881.00 for completing the contract; and (b) that if there were any changes in the plans and specifications (as, for example, eliminating manholes or adding manholes), then the additions or deletions would be governed

by the "neat lines" method. The Majority holds that the last clause about "neat lines" governs the entire contract; and I think the "neat lines" provision applies only to changes in plans and specifications. So I would give McMinn-Echols $92,881.00 for completing the contract regardless of everything else. Then I would take into consideration whether McMinn-Echols was entitled to extra amounts as they claim and as their proof showed.

At all events, the case would have to be reversed because there was some profered testimony that was put into the record but which the Court did not consider. On a retrial, of course, all issues are opened anew, except the construction of the contract as ruled by the Majority.